W. B. STONE, *et al.*, v. L. D. BOONE.

1. CASE, *Criticized.* The case of *Treadway v. Ryan,* 3 Kas. 437, criticized, but followed.

2. ACTION BY PARTNER AGAINST COPARTNER; *Attachment, When Maintainable.* Where one partner, before the adjustment of partnership accounts, brings an action against his copartner, he cannot maintain an attachment against the property of the defendant on the ground of the non-residence of the latter, unless the cause of action arose wholly within the limits of this state. *Held,* further, that upon the particular facts of this case, the cause of action did not arise wholly within the limits of Kansas.

3. MOTION TO DISCHARGE ATTACHMENT; *Right of District Court.* In an action by one partner against a copartner to recover one-half of the profits of the business of the firm prior to an accounting, or the ascertainment of a balance, where an attachment is sued out by the plaintiff against the property of the defendant on the ground of the non-residence of the latter, *held,* on a motion to discharge the attachment, the district court has the legal right to inquire and determine whether the alleged cause of action arose wholly within this state.

*Error from Cherokee District Court.*

ACTION in attachment by *W. B. Stone* and *H. Gove* against *L. D. Boone.* The plaintiffs reside in Cherokee county, and the defendant in Chicago, Illinois. The plaintiffs are producers and operators in lead and zinc ore, and the defendant is the proprietor of zinc works at Weir City, Cherokee county. On the 2d day of October, 1879, the plaintiffs and defendant entered into articles of copartnership at Galena, Cherokee county, in accordance with which the business of smelting zinc ore was to be done at Weir City, and it was to be sold wherever there was a market. The plaintiffs were to furnish at the zinc works black jack or zinc ore sufficient to run the works, and the defendant was to put his works in first-class repair, and to superintend and manage the same. After deducting the cost of material, ore, labor, etc., the profits of the venture were to be equally divided. A supplemental contract was made by the parties at Chicago, Illinois, on November 22, 1879, whereby the defendant

22—24 KAS.

Boone was made financial agent or manager of the partnership. He was to sell the spelter, collect the money, and generally conduct the business. By the terms of the first agreement, the business was to continue three months from the time the works commenced operations, which was October 17, 1879. By the supplemental agreement, the time was extended until February 1, 1880, at which date everything was to be settled, and any balance paid over in stock or cash. On March 16, 1880, plaintiffs commenced this action. The petition averred that about February 1, 1880, the parties made a settlement, stopped business, and took an account of the receipts and expenditures, and that the net profits were $12,236.19, one-half of which is due from defendant to plaintiffs. Two other items were set forth in the petition: damages, $3,000; personal property on hand at termination of partnership, $469.30. Judgment was claimed for $9,587.39.

The affidavit for attachment stated that, upon a fair adjustment of partnership accounts, the defendant would be found indebted to plaintiffs at least in the sum of $9,587.39. The affidavit also set forth these statutory grounds for the writ: *First*, non-residence; *second*, that defendant has assigned and disposed of his property with intent to defraud, hinder and delay his creditors; *third*, that he fraudulently contracted the debt for which suit was brought. Under the writ of attachment, the sheriff seized property of the defendant, of the value of $10,003.50. On April 5, 1880, the defendant presented his motion to the district judge to discharge the attachment as to the whole of the property. The motion was heard April 10, 1880. The judge held the first ground for attachment true; that the second and third grounds were untrue, and the attachment valid for $469.30. Thereupon, at the request of the plaintiffs, they were allowed four days in which to file an amended affidavit for attachment. This was filed April 13, 1880. It alleged that the plaintiffs' claim was composed of three items: plaintiffs' share of profits, $6,118.09; damages on contract, $3,000; personal property sold defendant on settlement, $469.30. The sole ground for

the attachment was, "that the defendant was, on the 16th day of March, 1880, and now is, a non-resident of the state of Kansas; that plaintiffs' cause of action arose wholly within the limits of the state of Kansas, prior to March 16, 1880." The defendant subsequently filed a motion to discharge a portion of the attached property, which was sustained on May 11, 1880, and all the property was discharged except enough to satisfy a judgment for $3,750 and costs; the court holding that, as to the $6,118.09 of profits, the plaintiffs were not entitled to the remedy of attachment on the ground of non-residence. To reverse this decision, the plaintiffs bring the case here.

*W. H. Hornor*, and *W. R. Cowley*, for plaintiffs in error.

*Bennett & Bennett, T. P. Anderson*, and *Blair & Perry*, for defendant in error.

The opinion of the court was delivered by

HORTON, C. J.: The petition avers a dissolution of partnership, a settlement between the parties, an accounting, and the finding of a balance. The affidavits of H. Gove (one of the plaintiffs) for the attachment and service by publication, and other proof introduced on the hearing of the motion to discharge a part of the attached property, make it quite clear, however, that the profits of $9,587.30, alleged to be due the plaintiffs from the defendant, are on an unsettled partnership account. In short, it is the sum, in the language of one of the plaintiffs, "that upon an accounting the defendant will be indebted to the plaintiffs." As the partnership, by the provision of the supplemental contract of November 22d, 1879, was to continue only to February 1, 1880, and as there is no pretense that it was extended after that date, we may assume that it was dissolved as alleged.

Two questions are therefore presented by the record: First, Does it appear that the claim upon which the attachment was issued is a "debt or demand arising upon contract, judgment or decree?" If it does not so appear, the second is, Did the

cause of action for the unascertained profits of the partner-ship arise wholly within the limits of Kansas?

The first inquiry is answered in the negative, in *Treadway v. Ryan*, 3 Kas. 437; yet, the writer of this opinion is compelled to say that only for that decision, the length of time that has elapsed since it was announced and the action of the legislature since, he would be disposed to hold that, upon principle, the contrary doctrine is the law. The case has no support, as he thinks, either in reason or the authorities. (*Humphrey v. Matthews*, 11 Ill. 471; *Goble v. Howard*, 12 Ohio St. 165.)

The writer's views on this subject are as follows: The proviso in subdivision 1 of § 190 of the code has reference to debts or demands founded upon contract, judgment or decree, and actions sounding in tort. An action after dissolution of a firm by one partner against a copartner for an accounting, and to recover an unascertained balance, is really an action founded on contract. A partnership is the combination by two or more persons, of capital or labor, or skill, for their common benefit, and is usually constituted, as between the parties themselves, by an agreement between them to share the profits and losses of their joint undertaking, whether it have reference to a trade or business, or merely to some particular adventure. Each partner has a kind of latent but vested interest in his share, and a proportionate claim against every partner who withholds his share, and the process of accounting and adjustment gives no title, but only ascertains its extent and measure. The claim for the to-be-ascertained balance is based upon the contract to share the profits and losses, and it no more arises out of transactions with third persons than the claim of the principal against an agent for goods and merchandise sold by the latter. If a balance is really due a partner upon the dissolution of a firm, if he has a just claim for money, such balance and such money are to be ascertained and restored to him through the proceedings of a court on account of the contractual relations of the members of the firm, and the failure or refusal of the de-

.fendant member or members to comply with the contractual terms of the partnership. But it is unnecessary to pursue this line of argument.

There seems to be running through the entire body of judicial decisions the doctrine that judges ought not to disturb prior rulings of the same court, except for cogent reasons; as some express it, "only where the decision is flatly absurd or unjust," as the certainty of the rule is often more important than the reason of it. The decision of *Treadway v. Ryan*, supra, was declared in 1866; it has stood unchallenged for nearly fifteen years; it has been copied and referred .to in various text-books as the law of this state; and in 1870 the legislature reënacted the section of the code of 1859 interpreted by that decision, (Laws 1870, ch. 87, § 4;) therefore it is not improper to say the law-making power of the state adopted the judicial construction given to the statute by the supreme court in 1866. Hence, it is not wise to disturb the decision by establishing another rule, although such rule seems sounder in principle.

We pass now to the second question. It appears from the testimony that the zinc ore was smelted at the zinc works at Weir City, in Cherokee county; that the spelter was shipped east to New York, Chicago, La Salle, and other places outside of the state, and sold by defendant, who resided at Chicago, Illinois. The proceeds of the sales were received by the defendant at his place of business in Chicago, and disbursed by him from that point. On February 2, 1880, after the close of the partnership, large sales to purchasers had not been accounted for to defendant; at least, at that time all the proceeds had not been collected. The alleged settlement in February was merely the exhibition of a statement to the partners by J. H. Gross, who had the management of the business of the firm at the zinc works, of an approximate estimate of the partnership; some items of this statement were unsatisfactory to plaintiffs; at the institution of this suit defendant was out of the state; no final or other balance had been struck; no demand had been made upon

defendant in the state for any particular balance; the product of the zinc works had been sold outside of the state; the money had been collected by defendant outside of the state; the defendant resided outside of the state; the default of defendant to account, if any default occurred, was outside of the state. The selling of the spelter, and the collection of the proceeds by the defendant, were within the literal terms of the articles of partnership, as the defendant was constituted the financial agent or manager of the firm; therefore, in all these matters, he committed no wrong and violated no right. Upon these facts, it cannot be said that the cause of action established on the motion to discharge a part of the property, arose wholly within the limits of this state.

The counsel for plaintiffs contend that the court had no legal right or authority to inquire, on a motion to discharge the property, whether the cause of action arose wholly within the state, upon the theory that subdivision one of §190 of the code confines such inquiry to the trial of the issues joined upon the pleadings. We think otherwise. The trial referred to at the close of the subdivision, is the trial (hearing) on the attachment; any other construction defeats the purpose of the statute, and is contrary to its spirit. The other causes of attachment do not have to be proved on the trial of the issues in the action, and we perceive no good reason for holding that the exception was intended by the legislature in subdivision one.

The order and judgment of the district court will be affirmed.

All the Justices concurring.