CITIZENS' NATIONAL BANK OF KANSAS CITY v. GRAHAM.

Division Two, December 23, 1898.

1. **Special Judge: SELECTION BY AGREEMENT: WHEN VALID.** Revised Statutes 1889, section 3327, allowing a special judge on agreement of parties, though not in terms providing that the agreement is dependent on inability of the regular judge to hold court, should be construed as making that condition; being in general terms, and being part of the same chapter as, and *in pari materia* with, section 3323, which makes such inability a predicate of any acquisition of jurisdiction by a special judge, whether elected or agreed on in accordance with section 3327.

2. ———: ———: ———: **LEGISLATIVE POWER: CONSTITUTION.** Section 29 of article VI of the Constitution having stated in *what cases* the legislature might provide for the holding of a term or part of a term of a circuit court, and having predicated the exercise of such right on the part of the legislature on the inability or disqualification of the circuit judge, this specification limits the legislative power to those cases *alone*, and the maxim *expressio unius*, etc., applies. (Dissenting opinion in State v. Seibert, 123 Mo. 435, as to the applicability of such maxim to the construction of the Constitution, followed.)

3. ———: **RETAINING JURISDICTION.** A special judge, who has been agreed on and has qualified, retains exclusive jurisdiction of the case, notwithstanding an election of a successor to the regular, disqualified judge. (Naffzieger v. Reed, 98 Mo. 87, overruled.)

*Prohibition.*

PRELIMINARY RULE MADE ABSOLUTE.

VIRGIL CONKLING and WARNER, DEAN, GIBSON & McLEOD for relator.

(1)   In the determination of the questions involved in this case it must not be forgotten that the regular judge of the circuit was in no way disqualified from finishing the trial of the cause at Carrollton.   (2)   If Judge Rucker had from' any cause been disqualified to try the case and a special judge had been agreed upon or elected by the bar to try it and the case had gone over until a successor to Judge Rucker had been chosen who was in all respects qualified to try it, then unquestionably Judge Rucker's successor in office would be the one to try it.   Lacy v. Barrett, 75 Mo. 473.   (3)   The writ of prohibition is applicable to the case at bar.   It is the only remedy where a special judge seeks to take jurisdiction of a matter where the regular judge, duly qualified, has assumed and taken charge of it as shown by the facts in this case.   State ex rel. v. Elkin, 130 Mo. 105; Sess. Acts 1895, p. 95, sec. 1; Railroad v. Wear, 135 Mo. 256; State ex rel. v. Hirzel, 137 Mo. 435; State ex rel. v. Ross, 122 Mo. 435.

WILLIAM C. FORSEE, J. L. MINNIS, R. B. GARNETT and HUGH K. REA for respondent.

(1)   The declination of Judge Rucker to proceed to try the cause upon its merits, and his vacation of the bench in order to permit the special judge to proceed to hear and determine it, was, in its legal effect, a declaration of the fact that he could not "properly preside" in it, and, if he could not "properly preside" at that term, he could not do so at any subsequent term.   Constitution, art. VI, sec. 29; R. S. 1889, secs. 3323-3327; Hawes on Jurisd., secs. 155 and 156; Cooley, Const. Lim., pp. 508, 509 and 511.   (2)   The circuit judge is not required to state, of record or otherwise, the reasons which induce him to send a particular cause or causes to a special judge.   He may, in the words of the statute, do this

"for any reason" which may satisfy his own conscience. Barnes v. Mullens, 78 Mo. 266. (3) As he did, in this instance, allow a special judge to be agreed upon, it must be conceded that there was some reason which was satisfactory to himself and sufficient in law. (4) The word "properly," as used in section 3323, Revised Statutes 1889, does not mean "conveniently." It justifies his sending a cause to a special judge only when he, "for any reason," feels that he can not righteously, or decently, or honorably, or with propriety, preside. (5) That jurisdiction can not be conferred by mere consent, is of course, elementary. Hawes on Jurisd., secs. 6, 10 and 11; Dodson v. Scruggs, 47 Mo. 286; Yale v. Mitchie, 47 Mo. 326; Harper v. Jacobs, 51 Mo. 297. (6) And it is equally true that where the laws have clothed a judicial officer with power to hear and determine a given cause, he has no power to divest himself of that jurisdiction except in the instances enumerated by law. To usurp powers not conferred by law, is no more reprehensible in the judicial officer, than to evade or decline the exercise of such as are so conferred. As the circuit judge declined, in this instance to proceed with the cause, and as the statute allowed him to decline in case he felt that he could not properly try it, the presumption that he declined upon the grounds permitted by law becomes conclusive, because otherwise his act in doing so was contrary to law. (7) The record entry showing that defendant was agreed upon at the June term, 1897, as special judge, invested him with full power and authority in the cause, and this power and authority remains with him, and with him only, until the final determination of the cause. Const., art. VI, sec. 29; R. S. 1889, secs. 3323-3327; Lacy v. Barrett, 75 Mo. 469; Barnes v. Mullens, 78 Mo. 266; State v. Hayes, 81 Mo. 574; State v. Hayes, 88 Mo. 344; Naffzieger v. Reed, 98 Mo. 87; State v. Ross, 118 Mo. 23; State v. Moberly, 121 Mo. 609; State v. Davidson, 69 Mo. 509; State v. Sneed, 91 Mo. 555; State v. Miller, 111 Mo. 549; State v. Gamble, 108 Mo. 500; Holliday v. Mansker, 44 Mo. App. 470.

SHERWOOD, J.—A preliminary rule has been awarded in this cause, which was issued to prevent James F. Graham from proceeding further in the cause of the Citizens National Bank of Kansas City v. M. L. C. Donnell, or entertaining any jurisdiction therein at the March term, 1898, of the Carroll circuit court, or at any time, etc.

The cause of the Bank v. Donnell, which gave origin to the present prohibitory proceeding, arose in Kansas City, Missouri, and was at the April term, 1897, taken on defendant's application to the circuit court of Carroll county, over which Hon. W. W. Rucker presided as judge. The cause was then docketed and came on for trial, on the plea in abatement filed before the change of venue was taken.

The result of the trial of the plea in abatement, before Judge RUCKER, was adverse to defendant, a verdict being rendered upholding the attachment, based on the allegation that Donnell had conveyed some $40,000 worth of his property to his son in order to defraud his creditors.

Donnell's motion for a new trial and in arrest were denied, and thereupon he filed his answer to the merits, to which plaintiff replied, and a jury was impaneled by Judge RUCKER and sworn to try the cause on its merits. This was on Friday afternoon, June 9, 1897.

Judge RUCKER's regular term of court at Salisbury in Chariton county, began on the Monday following, and the judge resided at Keytesville, in the same county, the respective places being about eight miles apart and each situated on the Wabash railroad. At this juncture, judging by his observations while presiding at the trial on the plea in abatement, Judge RUCKER concluded that to finish the trial of the case on its merits would *discommode* him, as he desired to return home before opening his term of court at Salisbury, and desired especially to be at Salisbury on the following Monday. So he called the attorneys of both parties to the bench and

requested them to agree upon some one to finish the case, giving the reasons therefor as we have stated. The attorneys did so and agreed upon Mr. James F. Graham to finish the trial. Mr. Graham ascended the bench and had the jury resworn.

The record whereby this agreement was manifested, omitting caption, is the following: "Come the parties by attorneys, and by agreement this cause is tried before the Honorable J. F. Graham, sitting as a special judge, and by further agreement, waived his taking the oath administered to circuit judges."

The evidence in the present proceeding shows that Judge RUCKER was not at all *disqualified* from trying the original cause aforesaid. As Mr. Conkling in his testimony pertinently says: "Counsel on both sides preferred to have Judge RUCKER try the case, and so stated to him. It was only at his urgent request that counsel agreed to *excuse* him. I know that Judge RUCKER sustained an absolutely fair and impartial relation to the case and the parties therein, and that nothing whatever existed to disqualify him from proceeding with the case."

1.  Our constitutional provisions in regard to vacancies, etc., occurring in the office of judge of any circuit, are contained in section 29, article VI: "If there be a vacancy in the office of judge of any circuit, or if the judge be sick, absent, or from any cause unable to hold any term or part of term of court, in any county in his circuit, such term or part of term of court may be held by a judge of any other circuit; and at the request of the judge of any circuit, any term of court or part of term in his circuit may be held by the judge of any other circuit, and in all such cases, or in any case where the judge can not preside, the General Assembly shall make such additional provision for holding court as may be found necessary."

The questions arising on this record are three, and these:

*First,* did James F. Graham acquire any jurisdiction over the cause under consideration in consequence · of the agreement of the parties entered of record as aforesaid?

*Second,* if he did acquire jurisdiction, did he subsequently lose the jurisdiction thus acquired?

*Third,* if Graham did not lose the jurisdiction thus acquired, did Judge RUCKER regain or retain such a modicum of jurisdiction therein, as enabled him to try the cause, or as would allow Graham to try the cause, and in either instance their respective judgments be equally valid?

It is obvious that a negative answer to the first question propounded, settles the judicial and jurisdictional *status* of Graham towards the cause under review.

Section 29 aforesaid, has greatly broadened section 17, article VI of the Constitution of 1865, but it has not changed the central idea of the original section, to wit, that of the *inability* of the judge of the circuit through sickness, absence or any other cause to hold court. Such inability as aforesaid, is the *indubitable predicate* of any acquisition of jurisdiction by any special judge, whether elected or agreed upon in accordance with section 3323, Revised Statutes 1889, or agreed upon by the parties in accordance with section 3327, Ib. And such idea of inability being regarded as the sole basis of steps to be taken to substitute a special for a regular judge, runs all through the statutes relating to changes of venue, and is couched in similar terms to that employed in the section cited. In proof of this, see section 2259 and 2262, where provisions are made where the regular judge is disqualified, for agreement upon, or election of, a special judge.

And although section 3327 does not *in terms* say that the agreement of the parties is dependent upon the disqualification of the regular judge, yet that section being part and parcel of the same chapter (46) as section 3323, and *in pari materia* as well with that section as with the other sections

cited, it must be construed and treated as forming, with those other sections, a connected whole, and governed by the same legislative intent as that which is stated in the other sections in more precise terms.

Even statutes passed at a later date, being *in pari materia* are construed in connection with former statutes, or even with cognate statutes, and construed as authorizing and requiring for such later statutes, the *same methods of procedure as* required by such former statutes. [Sutherland's Stat. Const., secs. 283, 284, 285, 288.] Many illustrations of this constantly applied rule, are furnished in the text-book cited. [See also, Ex parte Marmaduke, 91 Mo. loc. cit 257, and authorities there cited.]

Besides, the terms employed in section 3327 are *general* terms, and when this is the case, the letter of the statute may be enlarged or restrained according to the true intent of the law, because, in such cases, the *reason* of the law prevails over its *letter,* and general terms are so limited and restricted in their application as not to lead to injustice, oppression or an absurd consequence, the presumption being indulged, that the legislature intended no such anomalous results. [Ex parte Marmaduke, 91 Mo. loc. cit. 254, and cases cited; Sutherland's Stat. Const., sec. 218.]

Now, if section 3327 is to be taken *literally,* this "absurd consequence" might be presented: Without any disqualification whatever existing on the part of a regular judge, without any hint or suggestion of his disqualification being made, the parties to *each cause* on the trial docket might come together and agree upon a special judge, have that agreement entered of record; *unseat* the regular judge, and place simultaneously on the bench of the court as many special judges of co-ordinate and co-equal jurisdiction and powers as there are causes for trial, and then let that temporary and tumultuous judiciary squabble and scramble among themselves in the novel endeavor of attempting to settle the question of precedence between them! A result so absurd could never have been intended

by the legislature.    And I make bold to say that even if such had been the legislative intent, there does not exist in the legislature the power to give it effect.

And this further and cogent reason exists why the legislature has no such power, is furnished by section 29 of the Constitution already quoted.

That section by stating in *what cases* the legislature may make provision where the office of a judge of any circuit is vacant, or if the judge be sick or absent or from any cause unable to hold a term, etc., and that in all such cases, or in any case where the judge can not preside, it inevitably limits the power of the legislature to those cases *alone,* and the maxim of *expressio unius* applies.    This maxim applies as well to Constitutions as it does to statutes.    [State ex rel. v. Seibert, 123 Mo. loc. cit. 435, et seq., and cases cited.]

From these considerations it must needs follow that as Judge RUCKER was not disqualified, that the parties did not have it in their power by a mere agreement to choose Graham as a special judge to try the cause, and that such agreement was a nullity, and the first question propounded must receive a negative answer.    And this being a prohibitory proceeding no presumptions can be indulged in the face of the undisputed evidence, that disqualification on Judge RUCKER's part existed.

Of course if Graham never *acquired* any jurisdiction he did not *lose* any, and therefore the second question is answered by the answer to the first, and so also does that answer render unnecessary the answering of question third, and so I might stop here.

2.    But I deem it not improper to briefly advert to Naffzieger v. Reed, 98 Mo. 87, inasmuch as that case has been much pressed upon our attention as holding that where the regular judge is disqualified in a civil cause, and a special judge has been agreed upon by the parties and has qualified, that such special judge becomes the judge of the court for *all*

*the purposes of that suit, and retains his powers until final determination thereof;* but that when the successor of the regular, but disqualified judge comes upon the scene, either the special judge or the newly qualified regular judge, has also full *jurisdiction* to try and to determine the cause which the special judge was selected to try.    I have been told by counsel that I concurred in that ruling, but I am marked *"absent."*

That case stands alone, unsupported by a single decision of this court, and in effect opposed by all of them.

The case of Lacy v. Barrett, 75 Mo. 469, though cited for that purpose, gives it no support, because there, owing to certain omissions and irregularities, no special judge had been elected, and of course, the judgment being reversed it was proper to send the cause back for trial before the newly elected regular judge, as in contemplation of law no special judge stood in the way.

Not so, however, in Naffzieger's case, as there the special judge had been duly agreed upon and had taken the required oath.    To say, therefore, that after this formality had been gone through with, that on the coming in of the newly elected regular judge the jurisdiction over the particular cause would be thrown into *hotchpot* and be divided between the special and the regular judge, share and share alike, is more than I can subscribe to.    It sounds to me like *flagrant nonsense!* Such a ruling is as absurd as to declare to be true that two bodies could occupy the same space at the same time, or that two men could have legal conjugal relations with the same woman at the same time.

But upon close examination of that case, it will be found that the special judge mentioned therein, Selvidge, did preside, and entered the decree complained of, and that Judge Alton, the recently elected regular judge, took no part whatever in the litigation which resulted in the decree aforesaid. So that the remarks made respecting the competency of Judge Alton were *wholly obiter.*

Inasmuch, however, as they are misleading and mischievous in their tendency, that case, in so far as concerns them should be overruled.

For the foregoing reasons the preliminary rule should be made absolute. BURGESS, WILLIAMS and MARSHALL, JJ., concur; BRACE, J., in paragraph 1; GANTT, C. J., concurs, but not "in all the language used."