THE MISSOURI PACIFIC RAILWAY CO. v. STELLA M. PRESTON.

No. 11,792.   (66 Pac. 1050.)

SYLLABUS BY THE COURT.

1. JUDGE PRO TEM.—*Held a De Facto Judicial Officer—Attack upon Review.* The regular judge of the twenty-first judicial district was disqualified to sit in a cause pending before him, and the judge of the twelfth judicial district was called upon to try the same. He appeared, and was duly elected a judge *pro tem.* by the bar, and presided at the trial, with the acquiescence of the officers of the court and the parties to the action. The constitution provides that district judges shall not hold any other office of profit or trust under the authority of the state. *Held,* that the judge *pro tem.,* so called and chosen, was a *de facto* judicial officer, and his authority cannot be questioned in this court in a proceeding in error brought to reverse the judgment rendered by him in the cause which he was selected to try.

2. —— *Error Waived—Complainant Estopped.* The regular district judge, having been of counsel in a cause, was disqualified to sit, and defendant moved for a change of venue for that reason. The motion was overruled, but the court called upon

Railway Co. v. Preston.

a judge of an adjoining district to try the cause, and he was chosen and acted as judge *pro tem.*, as stated in the preceding paragraph. Such judge *pro tem.* granted a continuance of the cause, the parties to the action consenting that it might be tried by him at the term to which the same was adjourned, and no objection was made to his acting as such judge. *Held*, that if any error was committed in overruling the motion for a change of venue it was waived by the party complaining here.

3. ———— *Oath of Office—Presumption from Record.* A *de facto* district judge took and subscribed an oath that he would faithfully perform the duties of judge *pro tem.* in the case which he was selected to try at the regular May term of the court. The cause was continued to the October term, and the record is silent as to whether the judge took another oath of office. *Held*, that his power to proceed with the case at the October term was not impaired, and that, in the absence of a showing to the contrary, it will be presumed, in favor of the regularity of the proceedings, that the judge was duly qualified to sit and try the cause at the October term.

4. ———— *Term of Office — Settlement of Case-made — Cases Followed.* A judge *pro tem.*, upon overruling a motion for a new trial and rendering final judgment, allowed a certain time for the making and service of a case-made for this court, fixed a time within which amendments were to be suggested, and ordered that it be settled upon ten days' notice by either party. *Held*, that the term of office of such judge expired after the last day fixed for suggesting amendments, and that a case-made settled and signed by him after that time will not be considered. The cases of *K. & C. P. Rly. Co. v. Wright*, 53 Kan. 272, 36 Pac. 331, and *Manufacturing Co. v. Stoddard*, 61 id. 640, 60 Pac. 320, approved and followed.

5. ———— *Stay of Execution.* A stay of execution granted by a judge *pro tem.* until a case-made is settled has reference to an effectual settlement made before the judge has lost jurisdiction.

6. FINDINGS— *Consistency.* The findings examined, and *held*, that they do not overturn the general verdict and are not so inconsistent with one another as to justify a new trial.

Error from Marshall district court; F. W. STURGES, judge *pro tem.* Opinion filed December 7, 1901. *In banc.* Affirmed.

*Waggener, Horton & Orr, W. J. Gregg,* and *E. A. Berry,* for plaintiff in error.

*Irish & Brock,* and *W. W. Redmond,* for defendant in error.

The opinion of the court was delivered by

SMITH, J.: This case was first decided and affirmed January 5, 1901. (63 Pac. 444.) A rehearing was granted later, and the questions involved have been fully reargued before the whole court, since it was enlarged by the addition of four justices, elaborate briefs being filed covering the points discussed by counsel.

Judge Sturges, of the twelfth judicial district, was called upon to try this case, after a mistrial before Judge C. W. Smith, of the thirty-fourth district, and he acted as judge *pro tem.* At the May term, 1899, Judge Sturges was duly selected by the bar as judge *pro tem.,* and took the prescribed oath that he would faithfully perform the duties of such judge at that term. Upon application of the railway company, the trial of the case was continued to the October term, 1899, "both plaintiff and defendant agreeing thereto, and consenting to the trial thereof by said judge," according to the record.

It is contended that when Judge Sturges left his judicial district and was chosen by the bar to act as judge *pro tem.* and preside at the trial of this case, then pending in the twenty-first judicial district, in Marshall county, and when he accepted the trust, he was disqualified so to do, in that he violated that part of section 13 of article 3 of the constitution, which reads: "Such . . . judges shall receive no fees or perquisites

1. Judge pro tem. held judge de facto.

nor hold any other office of profit or trust under the authority of the state,'' etc. Conceding this claim to be sound, the disqualification complained of was no more complete than it would have been had an alien or a minor been chosen in the same way to sit as judge in the case. We are quite clear that the judicial acts of Judge Sturges performed in this case were those of a judge *de facto*, and are not subject to attack in a collateral way. After a review of all the authorities, Van Fleet, in his work on Collateral Attack, section 23, says:

''When a person has an appointment to act as judge of a court, which he and the officers of the court adjudge to be valid, and he takes possession of the court and acts, supported by the power of the state, he is a judge *de facto*.''

In the present case, Judge Sturges was recognized by the sheriff, clerk, and attorneys, including the counsel for the parties to this action, who consented to his trial of the cause, and no challenge of his authority or right to sit was made until long after his term of office as judge *pro tem.* had expired, and then, for the first time, in this court.

Whether jurisdiction may be conferred by consent is not involved; but the question is presented whether the acts of a *de facto* officer, having color of title to the office, who, while in the performance of his duties, is generally recognized by all persons concerned in the work he is performing, can be questioned in a collateral way, or in any manner except by a proceeding on behalf of the state to which such officer is made a party. In the case of *State v. Carroll*, 38 Conn. 449, 9 Am. Rep. 409, it was held that no color of right derived from an election or appointment is necessary in order to

2. Estopped from attack by consent to trial.

constitute an officer *de facto*. In that opinion, rendered by Chief Justice Butler, which has been said by Judge Redfield to be one of the landmarks of the law, it was said :

"An officer *de facto* is one whose acts, though not those of a lawful officer, the law, upon principles of policy and justice, will hold valid, so far as they involve the interests of the public and third persons, where the duties of the office were exercised :

"1. Without a known appointment or election, but under such circumstances of reputation or acquiescence as were calculated to induce people without inquiry to submit to or invoke his action, supposing him to be the officer he assumed to be.

"2. Under color of a known and valid appointment or election, but where the officer had failed to conform to some precedent requirement or condition, as to take an oath, give a bond, or the like.

"3. Under color of a known election or appointment, void because the officer was not eligible, or because there was a want of power in the electing or appointing body, or by reason of some defect or irregularity in its exercise, such ineligibility, want of power or defect being unknown to the public."

The application of this decision to the case at bar is found in the second and third subdivisions.

The constitution of Vermont provides that no person holding any office of profit or trust under the authority of congress shall be eligible to any appointment under the legislature, or to hold any executive or judicial office under the state. A postmaster was elected justice of the peace, and in a suit before him the defendants pleaded to the jurisdiction, alleging that at the time the summons issued he was a postmaster under the authority of congress and ineligible to hold a judicial office. The court held that a demurrer to this plea was rightfully sustained ; that the justice was an

officer *de facto*, and his judicial authority could not be questioned in that way. (*McGregor v. Balch et al.*, 14 Vt. 428, 39 Am. Dec. 231. See, also, *Gregg Township v. Jamison*, 55 Pa. St. 468; *Ostrander v. People*, 29 Hun, 513.)

In the late case of *The State v. Williams*, 61 Kan. 739, 740, 60 Pac. 1050, it was said:

' "It is a general rule of universal application that a person who receives an appointment to an existing office from those having authority to appoint, and qualifies and enters upon the discharge of the duties of the office, is a *de facto* officer, although he may be ineligible by reason of being a non-resident, a minor, or an alien. The acts of an officer who comes into possession of an office under the forms of law, and who assumes to act under such an appointment as Chapman had, are deemed to be legal and binding as to the public and all persons who have any interest in the things done by him. The acts of a *de facto* judge cannot be collaterally attacked, and his right to the office is not open to question except in a direct proceeding brought by the state; *and this is true in a case where the officer is incapable of holding the office.*" (See, also, *Hunter's Adm'r v. Ferguson's Adm'r*, 13 Kan. 462; *Hale v. Bischoff*, 53 id. 301, 36 Pac. 752.)

The decision quoted completely covers the question under discussion here. Judge Sturges was not a usurper in any sense. He was selected in the manner prescribed by the statute, by the members of the bar present. He took the statutory oath of office, and thenceforth was recognized by all the officers of the court, and by the parties litigant, as having such authority as the regular judge might have exercised had he presided in the case. The difference between a usurper and an officer *de facto* is pointed out in *Hamlin v. Kassafer*, 15 Ore. 456, 15 Pac. 778, 3 Am. St. 176.

In *The State, ex rel., v. Comm'rs of Garfield Co.*, 54 Kan. 372, 38 Pac. 559, the county of Garfield, by a judgment in a proceeding in *quo warranto* brought in this court, was dissolved, and adjudged to be an unconstitutional and void organization, for the reason that it contained a geographical area of less than 432 square 'miles, contrary to section 1 of article 9 of the constitution.    Later, however, in *Riley v. Garfield Township*, 54 Kan. 463, 38 Pac. 560, it was held that from the time the county was erected until its dissolution by this court it had a *de facto* existence, and that debts created by it during that time were valid and collectable.    In *Garfield Township v. Croker*, ante, p. 272, 65 Pac. 273, it was decided that a superintendent of public instruction of Garfield county before its dissolution was a *de facto* officer, and his right to exercise the duties of such office could not be inquired into in a collateral action to which the officer was not a party.

The *de facto* power of Judge Sturges was not diminished or impaired after the continuance of the case from the May to the October term.    It is true that he took and subscribed an oath on the 23d day of May, 1899, to perform faithfully the duties of a judge *pro tem.* of the district court of Marshall county, at the regular May term, 1899.    The record of his appointment shows that he was unanimously chosen by the bar to try this and other causes.    He was not divested of his judicial authority by a failure to take and subscribe the oath required of a judge *pro tem.* for the October term.    (*In re Hewes*, 62 Kan. 288, 62 Pac. 673 ; *State v. Carroll*, supra, subd. 2 of opinion quoted.)    The record is silent as to whether another oath was taken by him at the October term, and, if it were necessary to up-

3. Oath of office— presumption from record.

hold his acts at that time, we would presume that this silence was favorable to the regularity and validity of the proceedings of the court, and not against them. (*Garden City v. Heller*, 61 Kan. 767, 60 Pac. 1060.)

Counsel for the railway company assert that they recognized Judge Sturges as a "called-in" judge, under chapter 108 of the Laws of 1897, and not as a judge *pro tem*. In the case of *In re Hewes*, supra, it was held that when a district judge is called from his own district to hold court in a county within another district, and is then selected by the members of the bar as a judge *pro tem*., his authority to hold court in the latter district is derivable from his election as judge *pro tem*. When discussing the right of Judge Sturges to sit at the October term, counsel are strenuous in their insistence that their consent for him to do so could not confer jurisdiction, and that such consent did not cure the errors committed by the regular judge in his refusal to grant the railway company a change of venue to another county in February, 1899. Apart from the question whether jurisdiction can be conferred by consent, errors committed in the progress of a trial are often waived. Parties may conduct themselves in a manner which shows that a previous objection to an erroneous ruling has been withdrawn or waived. A demurrer to the evidence may be improperly overruled for lack of testimony to sustain the plaintiff's case, yet, when the defect is supplied by the defendants, the error is cured. (*Simpson v. Kimberlin*, 12 Kan. 579.) So, if a change of venue be improperly granted, if the parties appear and proceed to trial without objection, the error is waived, no matter how valid were the objections made to the change in the first instance.

We direct attention again to the language used in the journal entry continuing the case from the May to the October term, as follows: "Both plaintiff and defendant agreeing thereto, and consent to the trial thereof by said judge." If the venue had been changed by Judge Glass upon application of the railway company, when its motion was heard, and the case sent for trial to another county, it was certainly within the power of the parties, by stipulation, to agree that the order changing the venue might be set aside and the case tried in Marshall county. As bearing on this question, see *Vaughn v. Hixon*, 50 Kan. 773, 32 Pac. 358; *Stow v. Shay*, 54 id. 574, 38 Pac. 784; *Garden City v. Heller*, 61 id. 767, 60 Pac. 1060. Counsel for defendant below, after their application for a change of venue had been overruled by Judge Glass, went to trial without objection before Judge Smith, which trial resulted in a disagreement of the jury. Thereafter they agreed that Judge Sturges might try the case, which he did. After the verdict they moved for a judgment in their favor on the findings. Now they appeal to this court to correct errors committed against them by the last judge. During all these proceedings, there was never a suggestion coming from the counsel for the railway company that the case ought to be tried in another county, but there was complete acquiescence in the right of Judge Smith and Judge Sturges to sit and finally determine the case on its merits.

The motion for a change of venue presented to the regular judge in February, 1899, set forth two grounds: (1) That Judge Glass was interested, having been of counsel in the case; (2) that the inhabitants and taxpayers of Marshall county were prejudiced against the railway company to such extent that it could not

have a fair trial in that county.  No proof was made in support of the latter reason for the change, and no claim is made here that the court erred in overruling the application on the ground asserting prejudice of the inhabitants.  The object of counsel in seeking for a change of venue on the first ground was to have the case tried before a judge who was disinterested.  This was accomplished by the coming of Judge Sturges and his selection as judge *pro tem*.  The contention of counsel for plaintiff in error is reduced to the claim that the court erred in bringing a disinterested judge into Marshall county to try the case, instead of sending the case out of Marshall county to a disinterested judge to be tried.,  If the case had gone to the judge, they would have been satisfied, but, because the judge came to the case, they now complain.  A disinterested judge was secured, and this is what counsel were seeking in their application for a change of venue.

In the original opinion, it was held that the case-made was settled and signed after the term of office of the judge *pro tem*. had expired, and, for that reason, it was stricken from the record.  On October 13, 1899, the motion of defendant below for a new trial was overruled, and the court extended the time to March 15, 1900, within which period defendant might prepare and serve on plaintiff's attorneys a case-made for this court; and plaintiff below was allowed twenty days thereafter to suggest and serve amendments, the case-made to be settled and signed upon ten days' notice in writing by either party.  The case was served on counsel for plaintiff below on February 21, 1900, and, no amendments being suggested, the latter gave notice that it would be presented to the judge for settlement

4. Term of office—
settlement of
case-made.

on April 23, 1900, and it was signed and settled on that date. It was held in the former opinion that the term of office of the judge *pro tem.* expired on April 4, 1900, which was the last day fixed by his order for serving amendments. That part of the statute applicable to the question reads:

"In all causes heretofore or hereafter tried, when the term of office of the trial judge shall have expired, or may hereafter expire, before the time fixed for making or settling and signing a case, it shall be his duty to certify, sign or settle the case in all respects as if his term had not expired." (Gen. Stat. 1901, § 5035.)

In *Manufacturing Co. v. Stoddard*, 61 Kan. 640, 60 Pac. 320, after quoting from *K. & C. P. Rly. Co. v. Wright*, 53 id. 272, 36 Pac. 331, the court said:

"The above case is, in effect, a holding that the term of office of a judge *pro tem.* is limited to such specific periods as he sets for the making and service of the case and the suggesting of amendments thereto, and the settlement of the case, and that, if within such term of office no time is fixed for the settlement of the case, such term cannot be prolonged by specifying an indeterminate period within which the parties may come before him for the settlement of the case."

In *K. & C. P. Rly. Co. v. Wright*, supra, it was said:

"The only contingency which warrants an ex-judge in settling and signing a case is that at the expiration of his term the time was actually fixed for making or settling and signing the case."

It is contended that the writer of the opinion in the latter case, in referring to the section of the statute in question, misstated the language of the law by saying that, when the term of office of a trial judge shall expire *during the time fixed* for making or settling and

signing a case, it shall be his duty to sign and settle the case in all respects as if his term had not expired. Conceding the misstatement, we do not think it affected the decision. If a case is settled *before* the last day fixed for the doing of that act, it is settled *during* the time appointed. The interpretation placed upon the statute by the decisions from which we have quoted has been applied in many cases not reported, where the question arose on motions to dismiss. The explicit rulings in the two cases mentioned have left no ground for the profession to be misled, and we have not been convinced that they are unsound in principle or that they are based on a misconstruction of the statute. Stability in the decisions should be maintained, if possible, on questions of practice. In *Stone v. Boone,* 24 Kan. 337, 341, Chief Justice Horton, speaking for the court, said:

"There seems to be running through the entire body of judicial decisions the doctrine that judges ought not to disturb prior rulings of the same court except for cogent reasons; as some express it, 'only where the decision is flatly absurd or unjust,' as the certainty of the rule is often more important than the reason of it."

It is claimed that, because the judge *pro tem.* ordered that execution be stayed on the judgment until the case-made was settled, he retained jurisdiction until a settlement was in fact made. This order could have no reference to any other settlement than an effectual one, made before the judge lost jurisdiction of the case.

5. Stay of execution.

For the foregoing reasons, the matter contained in the case-made cannot be considered. We have re-examined the findings of the jury contained in the transcript of the record and conclude that they do not overturn the general

6. Findings approved.

verdict, nor that they are so inconsistent with one another as to justify a new trial.

The judgment will be affirmed.

JOHNSTON, J., concurring.

DOSTER, C. J. (concurring):   I now concur in the decision of this case.   I dissented on the former hearing because the proposition then advanced was that the authority of a judge *pro tem.* did not cease with the expiration of the term at which he was chosen, but might be resumed at the succeeding and subsequent terms, and continuously exercised until the final disposition of all the cases which the regular judge was disqualified to try.   I also said that, so far as the consent of the parties to the trial by the judge *pro tem.* was concerned, it was ineffectual to bind them, and in that connection I criticized the decision in *Higby v. Ayres and Martin*, 14 Kan. 331.   The view then taken I still have and the criticism then expressed I still make.   Now, however, a different proposition is made. It is that, admitting the lack of power *de jure* in the judge *pro tem.*, he was, nevertheless, a judge *de facto*, and his acts are unassailable collaterally.   With that I agree, but insist that consent, as mere consent—that and nothing more—cannot authorize the exercise of judicial power.   The syllabus in *Higby v. Ayres*, supra, seems to rest the decision on the mere consent of the interested parties, although some remarks are made in the opinion about the *de facto* character of the judge trying the case which indicate a broadening of the grounds upon which it was thought the authority of the judge might be based.   They are, however, apart from the point which appeared in the syllabus as the one for determination.

ELLIS, J. (concurring): As to the fourth paragraph of the syllabus and corresponding portion of the opinion of the majority, I base my concurrence upon the ground that this court having years ago, and not without reason, determined the period within which a judge *pro tem.* may settle and sign a case-made, and its ruling in that respect having been followed and applied in many cases, so that it is generally known and accepted as the law, it is now much better to follow than to overrule such decisions, even though, as an original proposition, I should incline to hold that a judge *pro tem.* may settle and sign a case-made at any time within a year of the trial. In matters of practice, rules long acquiesced in should not be regarded as subject to alteration whenever there is a change in the membership of the court.

POLLOCK, J. (dissenting): Recognizing to the fullest extent the importance of uniformity and harmony in the decision of this court, and especially in the matter of practice, I dissent from the doctrine announced in the fourth paragraph of the syllabus and the corresponding portion of the opinion.

Realizing the effect of this decision to be forever to put at rest the question of the power of a judge *pro tem.* in the settling of a case-made for this court, in the absence of further legislation, yet I deem the decision made so utterly and entirely at variance with a correct interpretation and construction of the constitution and statute law of the state with regard to the power conferred on a judge *pro tem.* that I refuse to sanction the authority of it by my concurrence. In so doing I attach but little importance to the argument made by some of my associates, that it is better to

abide by a former decision long concurred in, though wrong in principle, than frankly to acknowledge the error and correct the mistake, as applied to this present case.   That argument is not without great weight when applied to an erroneous decision, long followed, furnishing the foundation of large property rights, but it is unsound when applied to a recent decision which transgresses such a well-known rule of law as "appeals are to be favored," and acts as a pitfall to deprive a party of his day in court for the correction of errors.   In such cases, "nothing is ever settled until it is settled right."   Few institutions of human origin can assert a valid claim to the immortal attribute of infallibility.   With all due respect to the members of this court, past and present, it may be said that this tribunal is not one of the few.

The decision in this case unhesitatingly and without question follows the former decision of *Manufacturing Co. v. Stoddard*, 61 Kan. 640, 60 Pac. 320, which was rendered in March, 1900, after the judgment in the case at bar and the order for the making, serving and settling of the record had been entered.   That opinion is directly in point, but it is the first and only case reported from this court that in any manner sanctions or upholds the decision rendered in this. With that decision I do not agree.   It is a decision *per curiam*, evidently rendered without serious reflection or mature consideration, and, on account of its recent announcement, has not been so long followed, or become so hoary with age, or so sacred from precedent, as to render it invulnerable, or, as the reputed laws of the Medes and Persians, unalterable and unchangeable, though wrong.

The only case cited, referred to or relied upon as authority for the doctrine announced in *Manufactur-*

*ing Co. v. Stoddard,* supra, is *K. & C. P. Rly. Co. v. Wright,* 53 Kan. 272, 36 Pac. 331, and the application of it is made in the following language:

"The above case is, in effect, a holding that the term of office of judge *pro tem.* is limited to such specific periods as he sets for the making and service of the case, and the suggesting of amendments thereto, and the settlement of the case, and that, if within such term of office no time is fixed for the settlement of the case, or, at least, that if the time for its settlement has been left indeterminate, it must be determined by a notice given within the term fixing a definite date for the settlement of the case."

An examination of the opinion in *K. & C. P. Rly. Co. v. Wright* will show an utter want of analogy between them. It was not tried by a judge *pro tem.;* it had no reference to a judge *pro tem.;* it was nowise connected with or applicable to any act done or power exercised by a judge *pro tem.;* and in the attempt to liken the former case to the latter, in which no likeness exists, but which is essentially, inherently and unalterably unlike it, arose the error existing in the decision of *Manufacturing Co. v. Stoddard.*

The authority for the selection of a judge *pro tem.* is derived from the constitution. Section 20 of article 3 provides:

"Provision shall be made by law for the selection, by the bar, of a *pro tem.* judge of the district court, when the judge is absent or otherwise unable or disqualified to sit in any case."

The legislature, in pursuance of its constitutional authority, enacted section 1927, General Statutes of 1901, which provides:

"A judge *pro tem.* of the district court may be selected in the following cases: *First,* when the judge shall be sick or absent at the commencement of the

term; *second*, when the judge shall be sick or absent himself during or at the close of any term before all the cases pending in the court at the commencement of the term shall have been reached for trial; *third*, when the judge is interested or has been of counsel in the case or subject-matter thereof, or is related to either of the parties, or otherwise disqualified to sit.''

As shown by the record, the contingency provided against by the third clause in the above act having arisen, the judge *pro tem.* who presided at the trial of this cause was selected. In other words, Judge Sturges was selected judge *pro tem.* on account of a perpetual disqualification of the regular judge in a particular case, and not as a judge *pro tem.* to preside at a term, or portion of a term, in all cases, on account of the temporary absence, sickness or other disqualification of the regular judge. As to the authority of such judge *pro tem.* to act after selection, the legislature expressly and in positive terms conferred the same power over the case in which he was selected to preside, not only while holding court, but in the doing of all other acts connected with the complete and final determination of the case, as the regular judge would have possessed had he not been disqualified. Section 1931, General Statutes of 1901, provides:

''The judge *pro tem.* shall have the same power and authority as the regular judge, while holding court, and in respect to cases tried before him, or in which he may have been selected to act.''

No process of reasoning, no argument, however labored, no repetition of decisions, no logic, no sophistry will convince the mind that Judge Sturges, having been duly chosen by the bar as judge *pro tem.* to try the case, did not, by virtue of the foregoing constitutional and statutory provisions, have exactly the same judicial power over the case, both in open court

and in respect to its final disposition, as the regularly elected and qualified judge would have had in the event that he had not been disqualified. This is not only the reasonable and logical meaning to be given to the constitutional and statutory provisions above quoted but it is the only reasonable or logical interpretation that can be made. If authority be necessary in confirmation of this self-evident proposition, the books are full of adjudicated cases. This court, in the first point in the syllabus of the well-considered case of *M. K. & T. Rly. Co. v. City of Fort Scott*, 15 Kan. 435, held:

"Under section 1, chapter 85, of the Laws of 1870, a judge *pro tem.* may, after the expiration of the term at which a case has been tried before him, if within the time allowed by law or the order of the court, settle and sign a case-made."

In the case of *Lerch, Adm'r, v. Emmett et al.*, 44 Ind. 331, it was held:

"An attorney properly called to try a cause, in which the judge of the court is disqualified, has the same power over the case as the regular judge would have had if not disqualified. Hence, as the regular judge might have given time and signed the bill of exceptions after the term, the called or appointed judge may and ought to do so in a proper case."

In the opinion it was said:

"When a judge is disqualified to try a case, he may, by law, call an attorney to take his place in the trial of the cause. The attorney takes the bench, the judge goes to the bar and tries the case. In such a case, the attorney, or judge *pro tem.*, has all the power of the regular judge over or in the case."

In *Edmond P. Bacon et al. v. The State of Florida*, 22 Fla. 46, it was held:

"When a judge of one circuit holds a term of court

in another circuit, and during the term an order is entered upon the minutes allowing time after the adjournment for settling a bill of exceptions in a case tried by him, he is authorized to settle a bill after the adjournment of the term and within the time allowed by the order.''

In the case of *The State, ex rel. Sansone, v. Wofford*, 111 Mo. 526, 20 S. W. 236, it was said :

. ''The current of decisions of this court shows that the right of the special judge to hear and determine all motions, grant appeals, sign bills of exceptions, and in general to make all orders and hear all matters that come before it in the trial and disposition of such case, has always been recognized. (*State v. Davidson*, 69 Mo. 509 ; *State v. Sneed*, 91 id. 553, 4 S. W. 411 ; *State v. Bulling*, 105 id. 204, 15 S. W. 367, 16 S. W. 830.)''

In *Bank v. Graham*, 147 Mo. 250, 48 S. W. 910, it was held :

''A special judge, who had been agreed on and has qualified, retains exclusive jurisdiction of the case, notwithstanding an election of a successor to the regular, disqualified judge.''

In the case of *Staser et al. v. Hogan et al.*, 120 Ind. 207, 21 N. E. 911, 22 N. E. 990, it was held :

''Where a cause is tried before a special judge, and a verdict returned on the last day of the term of court, such special judge has authority to hear a motion for a new trial filed on the first day of the next term, and to make a final disposition of the cause.''

In the case of *Hyllis et al. v. State*, etc., 45 Ark. 476, it was held :

''The judicial power of a special judge, elected by the bar under article 7, section 21, constitution of 1874, where there is a vacancy in the office, or where the regular judge fails to appear, terminates when the regular judge appears and takes the bench ; and he

has no power after that to try a cause, even by consent, and though the regular judge be disqualified. Consent cannot impart judicial power. But where the regular judge is disqualified in a cause, or during the term falls ill, or dies, or becomes unable from any cause to hold the court, the authority of the special judge elected in his place continues for the remainder of the term of his election.''

Judge Sturges was selected judge *pro tem.* in this cause to preside in the place of the regular judge on account of the disqualification of the regularly elected judge to try it, and not to preside generally at the term on account of the absence or sickness of the regular judge. The disqualification of the regular judge in the case at bar was absolute and unending, and, by force of necessity, the jurisdiction and power of the judge *pro tem.*, chosen for this reason, terminated only with a final disposition of the case. Must we not then look to the power of a trial judge remaining in office as the measure of the power of a judge *pro tem.* to settle a case by him tried, rather than to the power of a trial judge whose term of office has expired? And must we not so measure his power for two reasons, either of which is amply sufficient: (1) Because the statute so declares; (2) because the legislature has expressly dealt with the power of a judge whose term of office has expired to settle and sign a case?

Section 549 of the code (Gen. Stat. 1901, § 5035) provides:

''In all causes heretofore or hereafter tried, when the term of office of the trial judge shall have expired, or may hereafter expire, before the time fixed for making or settling and signing a case, it shall be his duty to certify, sign or settle the case in all respects as if his term had not expired.''

This provision has reference to one subject and but

one. It grants power, under certain conditions, to a judge whose term of office has expired to settle a case tried by him. By necessary construction it must exclude every other subject. It has no reference to the power of a regular judge in office, nor has it reference to any power conferred on a judge *pro tem.*, who has no term of office, and is authority for the acts of neither. What, then, is the measure of power of the regular judge in office to sign and settle a case tried by him? This court has uniformly and without departure held to the rule that where a case is made and served within the time given by the trial court, or a valid extension of such time, it may be settled by the trial judge at any time within a year from the date of the judgment sought to be reviewed ; and the limitation of one year is fixed, not because the trial judge has lost jurisdiction or power to settle the case, but because of the provision contained in section 556 of the code (Gen. Stat. 1901, § 5042) limiting the period within which proceedings in error may be commenced in this court. (*Hill v. National Bank*, 42 Kan. 364, 22 Pac. 324; *Toof v. Cragun*, 53 id. 139, 35 Pac. 1103, *Benham v. Smith*, 53 id. 495, 36 Pac. 997.)

Upon the trial, the court, in entering judgment, made the following order :

"And thereupon, and upon application of the defendant, the court for good cause shown and by order extended the time until and including the 15th day of March, 1900, within which said defendant may prepare and serve a case-made herein for the supreme court in the above-entitled case on said plaintiff or her attorneys ; and the plaintiff was allowed twenty days thereafter within which to suggest and serve amendments thereto ; said case-made to be settled on ten days' notice in writing by either party.''

The case was made and served within the time so

given; amendments were suggested within time, and the case was settled and allowed by the judge in strict conformity to the order so made. That the court had jurisdiction and power to make this order is conceded; that the order so made was obeyed by the parties is conceded; yet, when so done, the act of the trial judge in settling the case is declared void and insufficient to confer jurisdiction upon this court to review the errors alleged to have been committed upon the trial, and upon what ground? Because the term of the judge *pro tem.* had expired. Neither the constitution nor the statute fixes or pretends to fix a term of office for a judge *pro tem.* In this instance, he was selected to preside because of the perpetual disqualification of the regular judge in this particular case. As has been seen, in presiding he exercised exactly the same power under the law that the regular judge would have exercised had he not been disqualified—neither more nor less. He had *power* under the constitution and statutes; he did not have a *term* of office. The word "term," when used in reference to the tenure of office, means ordinarily a fixed and definite time, and does not apply to appointive offices held at the pleasure of the appointing power." (Mech. Pub. Off. § 385; *Speed & Worthington v. Crawford*, 3 Metc. [Ky.] 207.) "The word 'term' is uniformly used to designate a fixed and definite period of time." (Throop, Pub. Off. § 303; *Gibbs v. Morgan*, 39 N. J. Eq. 126.)

By what statute, upon what authority in the law, written or unwritten, by what process of reasoning, do my associates determine that Judge Sturges, as judge *pro tem.* in this particular case, selected on account of the disqualification of the regular judge to try it by reason of his interest in the action, not only had a term of office, but the precise day of the expi-

ration of such term, that they may declare the provisions quoted from section 549 of the code (Gen. Stat. 1901, § 5035) applicable to his acts, and thus declare the same void or valid?

The foregoing decision, following the case of *Manufacturing Co. v. Stoddard*, supra, is based upon the erroneous assumption that Judge Sturges, as judge *pro tem.*, had a term of office, and that such term of office expired on the last day fixed by him for the suggestion of amendments to the case-made. There being ample power granted by the organic and statutory law of the state for the selection of Judge Sturges as judge *pro tem.* in this case to hear and finally determine the case and all matters connected therewith, and there being no law, constitutional or statutory, fixing a term of office for such judge *pro tem.*, or prescribing the length of such term, the proviso in section 549 of the code, prescribing the conditions upon which a trial judge whose term of office has expired may settle a case-made, can have, and does have, no possible application to this case. This court could, in my judgment, with just as much propriety, and the same sanction of law, hold his jurisdiction and authority over the case to have ended at the return of the verdict, or the rendition of the judgment, or other step in the progress of the case, as at the point designated, for any determination short of the full and complete disposition of the entire case and all necessary orders therein must of necessity result in hardship to some party litigant and be equally violative of the law.

I am fully convinced and satisfied that, under the constitutional and statutory authority conferred upon Judge Sturges by his selection as judge *pro tem.* in this case, the order by him made with regard to the making, serving and settling of a case-made for review of

errors in this court was valid—valid, not in part, but in its entirety; that, as the case was made and served within the time given, and as it was settled within one year from the date of the rendition of the judgment, and filed in this court, the act of settling was strictly within the terms of the order made and the provisions of law in that respect. That such was the grant of jurisdiction and power conferred in clear and unmistakable terms, I have no doubt. That the act of settling the case in the exercise of that power is valid, and should be upheld by this court, is indisputable.

CUNNINGHAM, GREENE, JJ., concurring in the dissenting opinion.