No. 26,254.

C. O. HANCOCK, *Appellant,* v. J. SIDNEY NYE, *Appellee.*

SYLLABUS BY THE COURT.

JUDGES—*Appointment Pro Tempore—Qualifications.* The facts and circumstances attending the selection and appointment of a judge *pro tempore* for the city court of Wichita, and of his induction into office and exercising the functions of an examining magistrate considered, and held that appellant's application to the district court for an injunction to prevent the magistrate from deciding whether appellant should be bound over to answer in the district court for certain felonies with which appellant was charged was properly denied.

Appeal from Sedgwick district court, division No. 2; THORNTON W. SARGENT, judge. Opinion filed April 11, 1925. Affirmed.

*John W. Adams, William J. Wertz,* and *George L. Adams,* all of Wichita, for the appellant.

*C. B. Griffith,* attorney-general, *H. C. Castor,* and *I. N. Williams,* both of Wichita, for the appellee.

The opinion of the court was delivered by

DAWSON, J.: This is an appeal from a judgment of the Sedgwick county district court denying an injunction sought by appellant to halt proceedings before an examining magistrate instituted to determine whether appellant should be held for trial for certain felonies charged against him.

It appears that appellant, C. O. Hancock, was elected clerk of the city court of Wichita in 1922, and because of official misconduct he was ousted from that office some time in 1924. Notwithstanding such delinquency, he was reëlected in November, 1924, following which the state lodged two charges of felony against him, covering the graver phases of his official misconduct—embezzlement and falsification of public records.

It also appears that in Sedgwick county preliminary inquiries touching the commission of felonies are commonly brought in the city court of Wichita, and because defendant was the clerk of that court it was suggested by an attorney for appellant that it might be embarrassing for the judge of that court to serve as examining magistrate where he might have to order his own clerk bound over to the district court for trial; and so this attorney for appellant and the county attorney agreed to invite the appellee defendant,

J. Sidney Nye, an attorney residing in Newton, in the adjoining county of Harvey, to serve in lieu of the regular judge of the Wichita city court.

Accordingly, defendant Nye came to Wichita, and the city judge conferred on him a formal appointment in writing as judge *pro tem.* Nye took the oath of office, assumed the bench and called the case for hearing. Appellant was on hand with four lawyers, Dempster O. Potts, John W. Adams and two other attorneys. Before the state began the presentation of its evidence the county attorney asked Attorney Potts, in the presence of appellant, if it was entirely satisfactory to have Nye serve as examining magistrate, and Potts answered, in the presence of appellant, that it was perfectly satisfactory; that he had known Nye for several years and that he would be all right to try the case. About that time another of appellant's attorneys interposed an objection:

[Mr. John Adams:] "I object to the trial of the case because the magistrate of this court is not a resident of this county; object to the jurisdiction of this court.

[Mr. Castor, county attorney:] "Mr. Potts was present in court this morning and agreed upon Mr. Nye. Now you are going to go back on your word?

[Mr. Potts:] "I am not objecting to Mr. Nye acting as judge. . . .

[The Court, Mr. Nye:] "Who is the leading attorney?

[Mr. Adams:] "We have no leading attorney; we are all leaders.

[County Attorney:] "Mr. Potts, did not you understand that we would agree that this case could be submitted to Judge Nye?

[Mr. Potts:] "Yes, sir, I said so and I stand by it now.

[The Court, Mr. Nye:] "Mr. Hancock, who represents you in this matter?

[Mr. Hancock:] "Mr. Potts is my attorney and is going to be in this case, and whatever he does about it is perfectly satisfactory to me.

[The Court, Mr. Nye:] "The objection will be overruled; proceed, gentlemen."

The examination then proceeded, with Mr. Potts representing Hancock. Mr. Adams left the court room and did not return.

At the conclusion of the preliminary examination it was suggested that the magistrate withhold his decision for a day or two until briefs might be prepared and submitted for his consideration. Court and counsel assented to the suggestion, but in the interim allowed for that purpose this action was begun in the district court to restrain the examining magistrate (defendant Nye) from rendering a judgment of any sort, on the ground that he was disqualified to act.

The district court heard the evidence, as summarized above, and denied the injunction, finding—

"The Court: I find that Mr. Potts represented Mr. Hancock, and, representing Mr. Hancock, agreed that Mr. Nye could try this case, and that such an agreement is valid."

Hence this appeal.

Having set down the main features and facts of this controversy, it seems perfectly clear therefrom that no case for equitable interference with the proceedings before the examining magistrate was established. It is elementary that courts of equity have no control over courts of law, and, subject to some exceptions not here pertinent, they have no right to issue mandates to common-law magistrates or to courts of law to enjoin the exercise of their functions. (Merwin's Equity and Equity Pleading, 74 *et seq.*; 32 C. J. 279, *et seq.*) Moreover, a preliminary examination can be waived entirely by a person charged with a crime; and if all the requisite matters pertaining to a preliminary examination can be waived, surely a part of them can be, and it logically follows that the qualifications of the examining magistrate are requisites which may be waived. Cases are cited which hold that jurisdiction cannot be conferred by agreement of parties. Conceding the doctrine which they declare, these cases all relate to judicial proceedings where final adjudications were made and intended to be made. If this case were one where the decision of the defendant acting magistrate would amount to a final judgment carrying a fine or jail sentence or both, or amount to an absolute acquittal of the offense charged against him, or if it were a civil action and the magistrate's decision would amount to a final judgment upon which possession of real or personal property or for award of money were decreed, the cases cited by appellant might be of some significance. But even in such cases it is doubtful whether equitable interference would properly lie, especially under our procedural system, which is so favorable to and tolerant of the right of direct appeal.

In the orderly proceedings of our courts of general jurisdiction it is not improper for rival litigants and their counsel to agree that in the absence of the district judge an attorney may conduct that part of a judicial proceeding which has to do with receiving the verdict of a jury, and he may permit the jury to separate at midnight, and reconvene them the next morning, and receive and enter their verdict. (*Bank v. Courter*, 97 Kan. 178, 183, 155 Pac.

Hancock v. Nye.

27.)   In the noted case of *The State v. Keehn,* 85 Kan. 765, 118 Pac. 851, it was held that the defendant on trial for murder might lawfully waive the presence of the trial judge at the return of the verdict, and that he did so when he made an agreement in open court, with the consent of the court, that the verdict might be received by a designated attorney in the absence of the trial judge.

This case is altogether different from that of *Golden v. Mitchell,* 107 Kan. 1, 190 Pac. 785, where the authority of the person assuming to act as judge *pro tem.* was challenged from the very moment he assumed to act.   In that case there was no agreement of counsel or litigants.   Here the appellant and part of his array of lawyers did agree.   The fact that one of appellant's attorneys did not agree and walked out of the court room was of no consequence. A diversity of opinion on questions of law or polemical tactics among attorneys arrayed on one side of a lawsuit is insufficient to compel the court to halt its deliberations until the client can hold a caucus and determine a consistent policy for his attorneys to pursue.

Furthermore, it has to be noted that defendant Nye was actually inducted into the office of judge *pro tem.* in conformity with the statute.   He held a colorable appointment, executed by the city court judge who is authorized by statute to make such appointments. (R. S. 20-2011.)   He took the oath of office (R. S. 20-2013), and assumed his magisterial functions by virtue of that appointment as well as by agreement of litigants and counsel.   One of the agreeing counsel was the state's own proper legal representative, the county attorney of Sedgwick county, the only official (other than the attorney-general) who could challenge Nye's right to exercise his magisterial functions.   (*Young v. Newbold,* 114 Kan. 86, and citations, 217 Pac. 269.)   Certainly in this state of the case Nye was not an out-and-out usurper.   He was at least a *de facto* examining magistrate, and so long as the state did not object he had power to proceed to a deliberate determination of the special matter submitted to him, which was whether certain crimes charged had apparently been committed in Sedgwick county and whether the appellant was probably the guilty party.   (R. S. 62-614 *et seq.*) See, also, *Railway Co. v. Preston,* 63 Kan. 819, 66 Pac. 1050; *Chandler v. Chandler,* 92 Kan. 355, 140 Pac. 858; *Humphrey v. City of Pratt,* 93 Kan. 413, and citations, 144 Pac. 197; *Patrick v. Haskell County,* 108 Kan. 141, syl. ¶ 3, 193 Pac. 1061; *Parvin v. Johnson,* 110 Kan. 356, 203 Pac. 721.)

Contemplating the protracted hindrances which have hitherto attended the efforts of the state to keep its judicial machinery in motion in this case, it cannot be out of place to remark that there should have been no difficulty about getting a magistrate to conduct a preliminary examination concerning the charges lodged against the appellant. The state has supplied itself with many magistrates. (R. S. 62-201, 62-210, 62-601, 62-629.) Any one of those designated by the statute could have served as examining magistrate. Even a district judge himself is an examining magistrate *ex officio,* and while he has plenty to do without exercising that function, if a serious question is unexpectedly raised at *nisi prius* whether an accused has actually had a preliminary examination touching the specific offense for which he is on trial, it does not imperatively follow that the public expense for per diem and mileage of jurors and witnesses convened for his trial must all go for naught. In such a dilemma the district judge with propriety may suspend proceedings at *nisi prius* for an hour or two and give the accused a preliminary examination himself, and where no prejudice to accused or real justification for a continuance is apparent, the information may be refiled and the regular trial recommenced and proceeded with without delay. These observations are appended here as a reminder that in this state our criminal code for the administration of justice is vastly more expeditious and efficient than we lawyers and judges are always mindful to give it credit for. (See *The State v. Keehn,* 85 Kan. 765, 118 Pac. 851; *The State v. Fleeman,* 102 Kan. 670, 677, 171 Pac. 618.)

The judgment is affirmed.