State v. Billings.

---

No. 26,631.

The State of Kansas, *Appellant*, v. Lew Billings, *Appellee*.

SYLLABUS BY THE COURT.

1. Justices of the Peace—*Title to Office—Who May Question.* Where a person lawfully held the office of justice of the peace and was thereafter elected probate judge, and later became *ex officio* judge of the county court, but notwithstanding his induction into these other offices continued to exercise the powers and duties of justice of the peace, such person was at least a *de facto* justice of the peace; and where a defendant was arrested, tried, and convicted of a crime before such justice and appealed to the district court, he cannot, by plea in abatement or by any other collateral procedure, be heard to question the right of the justice of the peace to hold his office; and until the title to his office is adjudicated in an action properly instituted by the state itself or by one on whom the state has conferred the office, all the official acts of such person holding the office of justice of the peace are valid and binding—assuming but not deciding that he was not *de jure* but merely a *de facto* officer.

2. Same—*Title to Office—Forfeiture as Abatement of Criminal Action.* Defendant was arrested, tried and convicted before a justice of the peace for an offense against the prohibitory liquor law. He appealed to the district court and filed a plea in abatement based on the ground that the justice of the peace had forfeited and vacated his office later by his election and induction into the offices of probate judge and judge of the county court. *Held*, that such plea was unavailing and should have been overruled.

Criminal Law, 16 C. J. p. 406 n. 26. Justices of the Peace, 35 C. J. pp. 453 n. 51, 465 n. 34; L. R. A. 1918D, 1079; 16 R. C. L. 334, 335, 340.

State v. Billings.

Appeal from Phillips district court; Willard Simmons, judge. Opinion filed January 9, 1926. Reversed.

*C. B. Griffith,* attorney-general, and *William Kingery,* county attorney, for the appellant.

*W. A. Barron,* of Phillipsburg, for the appellee.

The opinion of the court was delivered by

Dawson, J.:   The state brings this appeal from an adverse decision of the district court on a plea in abatement in a liquor case.

The defendant, Lew Billings, was arrested for a misdemeanor, and tried and convicted before a justice of the peace in Phillipsburg. He appealed to the district court, and there filed a so-called plea in abatement based upon the following facts:

The magistrate under whose warrant the defendant was arrested and before whom he was tried and convicted was one A. F. Walker, who for some time past (exact time not shown) had been a duly elected, qualified and acting justice of the peace in the city of Phillipsburg; and while holding that office he was elected probate judge of Phillips county and was inducted into the latter office on January 6, 1925, and thereafter continued to exercise the powers and discharge the duties of both offices.

On April 6, 1925, the county attorney filed with Walker as justice of the peace, a sworn complaint against Billings charging him with a violation of the intoxicating liquor law, and on the. same day Billings was arrested by the sheriff.

On April 7, 1925, the board of county commissioners of Phillips county adopted a resolution establishing a county court under authority of chapter 131 of the Laws of 1923 (R. S. 20-801 *et seq.*), and Walker as probate judge became *ex officio* the judge of the county court.

At the city election in April, Walker was reëlected as justice of the peace of the city township of Phillipsburg and qualified on April 10, 1925.

On April 15, 1925, defendant's cause came on for trial before Walker as justice of the peace. The findings of the district court recite the facts of that trial thus:

"Hearing set for April 15, 1925, trial and conviction had on last date, over the objection of defendant to such hearing for the reason that A. F. Walker, a justice of the peace of said city, had been elected probate judge of Phillips county, and appointed county judge, and had no authority to hear such cause as justice of the peace."

Following the overruling of defendant's objections and after his conviction, sentence, and appeal, came this plea in abatement in the district court, which was sustained.

The state assigns and argues various errors. We shall need to notice but one—but it involves an important principle in the administration of justice in criminal cases.

Walker was in possession of the office of justice of the peace on April 6, 1925, when he issued his warrant for defendant's arrest, and also on April 15, 1925, when he tried, convicted and sentenced the defendant. Walker had been in the office for many months. Whatever may have been the abstract legal effect upon Walker's title to the office of justice of the peace by his induction into the office of probate judge in January, 1925, it made no actual change in affairs. He continued to exercise the functions of a justice of the peace. So, too, regardless of the abstract legal question possibly involved in his induction into the office of county judge on April 10, 1925, Walker did continue to hold and exercise the powers and discharge the duties of a justice of the peace. He was at least a *de facto* justice of the peace.

Now it is fundamental that the official powers of a *de facto* officer cannot be challenged collaterally. They can only be questioned in a direct proceeding, and then only by the state itself or by one on whom the state has bestowed the legal title to the office. The only party who could challenge Walker's right to hold the office of justice of the peace is the state of Kansas on the relation of its county attorney or attorney-general, and the state itself could only do so in a direct action brought for that purpose. The single exception to this rule of law would arise if some person other than Walker claimed title to the office by lawful election or appointment thereto. He, too, could institute a proper action against Walker for possession of the office. (*Harrington v. Smith,* 114 Kan. 262, syl. ¶ 2, 217 Pac. 270.)

As to all others, Walker's right to the office of justice of the peace is unassailable; and not only is this the law, but it would never do to have it otherwise. It would create an intolerable situation if every "Tom, Dick and Harry" arrested for a criminal offense could promptly switch the issue from that of his own guilt or innocence to the mere collateral one of the magistrate's title to his office and his right to hear and determine the cause being prosecuted against the accused.

In *Pfeifer v. Klug,* 114 Kan. 384, 219 Pac. 498, it was said:

"The administration of law and government would be hopelessly entangled and delayed if a private citizen at his own pleasure or caprice could halt their orderly processes by questioning whether the school district, the township, the city, or the county had been lawfully organized, or whether the sheriff who served him with process, the assessor who valued his property, the council or board which levied the taxes, or the treasurer who sought to collect them, had good title to their offices and had been properly inducted therein. Such futile, collateral questions would not necessarily stop even there. There might be a challenge of the right of the judge who tried the case to hold his office, or of the judicial powers of this court to review the judgment. All this has been explained many times, and it is but briefly repeated here because apparently there is need of it." (p. 385.)

In *Hancock v. Nye,* 118 Kan. 384, 234 Pac. 945, where a defendant in a criminal case sought to question the legality of the assumption of official powers by one Nye as examining magistrate, it was said:

"Furthermore, it has to be noted that defendant Nye was actually inducted into the office of judge *pro tem.* in conformity with the statute. He held a colorable appointment, executed by the city court judge who is authorized by statute to make such appointments. (R. S. 20-2011.) He took the oath of office (R. S. 20-2013), and assumed his magisterial functions by virtue of that appointment as well as by agreement of litigants and counsel. One of the agreeing counsel was the state's own proper legal representative, the county attorney of Sedgwick county, the only official (other than the attorney general) who could challenge Nye's right to exercise his magisterial functions. (*Young v. Newbold,* 114 Kan. 86, and citations, 217 Pac. 269.) Certainly in this state of the case Nye was not an out-and-out usurper. He was at least a *de facto* examining magistrate, and so long as the state did not object he had power to proceed to a deliberate determination of the special matter submitted to him, which was whether certain crimes charged had apparently been committed in Sedgwick county and whether the appellant was probably the guilty party." (p. 387.)

In *State v. Miller,* 71 Kan. 491, 80 Pac. 947, the defendant was convicted of pocket-picking. On appeal he complained that he had never had a lawful preliminary examination; that the person who had assumed to act as justice of the peace and to conduct his preliminary examination had theretofore accepted the office of city attorney, which operated to forfeit and vacate the former office held by him. Speaking by its chief justice, this court said:

"The defendant has not pointed out the incompatibility between the functions of the offices such as would imply a surrender and vacation of that of justice of the peace; but if they are in fact incompatible it does not avail the defendant, Farrell had been duly elected and installed in the office.

Acting under the authority thus conferred he remained in possession of the office, and was in the exercise of its functions in hearing the preliminary examination of the defendant, and was, therefore, at least a *de facto* officer. His right to the office is not open to collateral attack, and his official acts are as binding upon the public and litigants as though his qualifications were unchallenged and unobjectionable. As was held in *The State v. Williams,* 61 Kan. 739, 741, 60 Pac. 1050:

"'The acts of a *de facto* judge cannot be collaterally attacked, and his right to the office is not open to question except in a direct proceeding brought by the state; and this is true in a case where the officer is incapable of holding the office.' (*Hunter's Adm'r. v. Ferguson's Adm'r.,* 13 Kan. 462; *Hale v. Bischoff,* 53 id. 301, 36 Pac. 752; *In re Coram,* 62 id. 271, 62 Pac. 661, 84 Am. St. Rep. 382.)" (p. 492.)

In view of these precedents and authorities, which could be indefinitely multiplied without going outside of our own reports, it is clear that defendant's plea in abatement should have been overruled; so the judgment of the district court must be reversed, and the cause remanded with instructions to that effect, and for further proceedings consistent therewith.

It is so ordered.