No. 29,337.

THE STATE OF KANSAS, *Appellee*, v. LLOYD ROBERTS, *Appellant*.

(288 Pac. 761.)

Opinion filed June 7, 1930. 

*H. S. Hines,* of Arkansas City, *Burt Comer* and *Harold H. Malone,* both of Wichita, for the appellant.

*William A. Smith,* attorney-general, *R. O. Mason,* assistant attorney-general, and *Bert E. Church,* county attorney, for the appellee.

The opinion of the court was delivered by

HUTCHISON, J.: The appeal in this case is by the defendant in a criminal case, where he was convicted of being a persistent violator of the liquor law, and he assigns as errors the election of a judge *pro tem.* to try the case when the district judge had died before the election and the trying of the case before such judge *pro tem.* and the overruling of the motion for a new trial and the pronouncing of judgment and sentence upon him by a judge *pro tem.* elected after the appointment and qualification of a district judge to fill the vacancy.

The undisputed facts are that Hon. L. H. Finney, district judge of the twenty-fifth judicial district of Kansas, which includes the county of Sumner, where this case was pending and later tried, died August 31, 1929; that Hon. E. J. Taggart was elected judge *pro tem.* on September 3, 1929, and duly opened court in Sumner county that day, and duly adjourned court until October 7, 1929, when this case was tried and a verdict returned; that the governor appointed Hon. Wendell Ready as district judge to fill the vacancy on October 21, 1929, and he qualified the same day; that on October 28, 1929, Hon. E. J. Taggart was elected judge *pro tem.* to hear the motion for new trial after Judge Ready had entered his disqualification to sit by reason of having been consulted in a companion case; that the defendant by his counsel objected to Hon. E. J. Taggart sitting as judge *pro tem.,* also to a trial of the case before him as judge *pro tem.* or *de facto* judge, and to the introduction of any testimony, and moved the court to discharge the defendant, which objections and motions were overruled. That he objected on October 28 to the disqualification of Judge Ready and the election of a judge *pro tem.* and to the hearing of the motion for new trial before the judge *pro tem.* reëlected at that time, who overruled the objections and heard and overruled the motion for new trial and pronounced sentence on defendant. This enumeration of objections and motions made is here noted to show that defendant did not waive any of his rights by silence or acquiescence, but from the very beginning

of the case made timely objections to raise and preserve the points he is now presenting on review.

Appellant urges that R. S. 20-305 to 20-311 authorize and permit the election of a judge *pro tem.* only when the presiding judge is sick, absent or disqualified, and would not be applicable where he was deceased, and that in case of his death or resignation there is a vacancy which under the constitution (art. 3, § 11) must be filled by appointment to be made by the governor, citing *Keys v. Keys,* 83 Kan. 92, 109 Pac. 985, *Golden v. Mitchell,* 107 Kan. 1, 190 Pac. 785, and other authorities to sustain his contention. The judges *pro tem.* in both of these cases cited were elected as such while the presiding judges were living but absent on account of illness, which would bring the election within the provision of the statute, but in both cases the acts of the *pro tem.* judges, after the death or resignation of the respective judges and until the appointment of their successors, were approved and sustained because of their having been *de facto* judges.

It is suggested but not urged that in the case at bar the deceased judge might within the meaning of the statute be considered absent so as to authorize and justify the election of a judge *pro tem.*, but such proposition does not merit discussion. (1 C. J. 344.)

The contention of the appellant may readily be conceded that the election of a judge *pro tem.* in this case was not within the provisions of the statute (R. S. 20-305), but whether properly and legally elected or not, he assumed the duties of the office, was accepted and reputed as being such officer, and was in possession of the office under a fair color or title thereto, which would make him a *de facto* officer regardless of the legality of his election.

"An officer *de facto* is one who has the reputation of being the officer he assumes to be, and yet is not a good officer in point of law. A person will be held to be a *de facto* officer when, and only when, he is in possession, and is exercising the duties, of an office; his incumbency is illegal in some respect; he has at least a fair color of right or title to the office, or has acted as an officer for such a length of time, and under such circumstances of reputation or acquiescence by the public and public authorities, as to afford a presumption of appointment or election, and induce people, without inquiry, and relying on the supposition that he is the officer he assumes to be, to submit to or invoke his action . . ." (46 C. J. 1053.)

"The acts of an officer *de facto* are as valid and effectual where they concern the public or the rights of third persons, until his title to the office is judged insufficient, as though he were an officer *de jure,* and the legality of

the acts of such an officer cannot be collaterally attacked in a proceeding to which he is not a party." (46 C. J. 1060, 1061.)

. In the case of *Parvin v. Johnson,* 110 Kan. 356, 203· Pac. 721, the judge *pro tem.* failed to take the oath required by statute (R. S. 20-308), and it was there said:

"One who exercises the powers and duties of judge *pro tem.* under an election by the bar of the district court and with the recognition and acquiescence of the other officials of the court, is a *de facto* judge and his official acts are valid and binding notwithstanding his failure to take the oath of office as provided by statute." (Syl. ¶ 1.)

In the case of *Railway Co. v. Preston,* 63 Kan. 819, 66 Pac. 1050, the judge *pro tem.* who was elected was already holding another office which under the constitution would not permit him to accept any other office of trust or profit, and it was there held:

"That the judge *pro· tem.,* so called and chosen, was a *de facto* judicial officer, and his authority cannot be questioned in this court in a proceeding in error brought to reverse the judgment rendered by him in the cause which he was selected to try." (Syl. ¶ 1.)

In the case of *State v. Miller,* 71 Kan. 491, 80 Pac. 947, it was held:

"The judicial acts of one duly elected and acting as a justice of the peace are not open to collateral attack because he had prior to that time accepted the office of city attorney, and was also acting in that capacity." (Syl. ¶ 1.)

The Keys case, *supra,* cited by both parties, is strong in its conclusion as to the validity of the acts of a *de facto* judicial officer, it being the case where the judge *pro tem.* was elected while the judge was sick, but without authority continued to hold court after the death of the judge, and it was there held:

"That the judge *pro tem.* was a *de facto* judge, acting under color of authority; that none of his judgments or orders as such is void, or subject to collateral attack." (Syl. ¶ 1.)

"Where a person lawfully held the office of justice of the peace and was thereafter elected probate judge, and later became *ex officio* judge of the county court, but notwithstanding his induction into these other offices continued to exercise the powers and duties of justice of the peace, such person was at least a *de facto* justice of the peace; and where a defendant was arrested, tried, and convicted of a crime before such justice and appealed to the district court, he cannot, by plea in abatement or by any other collateral procedure, be heard to question the right of the justice of the peace to hold his office; and until the title to his office is adjudicated in an action properly instituted by the state itself or by one on whom the state has conferred the office, all the official acts of such person holding the office of justice of the

peace are valid and binding—assuming but not deciding that he was not *de jure,* but merely a *de facto* officer." (*State v. Billings,* 120 Kan. 162, syl. ¶ 1, 242 Pac. 136. See, also, *State v. Sweezer,* 112 Kan. 818, 212 Pac. 661; *In re Day,* 129 Kan. 14, 281 Pac. 865.)

An earlier Kansas decision than any here cited was *State v. Williams,* 61 Kan. 739, 60 Pac. 1050, where a defendant charged with perjury raised the point that the oath had been administered by a *de facto* judge. The conviction was sustained, and the opinions contains the following interesting information:

"In this country the *de facto* doctrine applies to the fullest extent . . . As counsel for the state in their arguments say, 'it might occur that an innocent man should be convicted and executed for a capital crime on perjured testimony in a *de facto* state (*Texas v. White,* 7 Wall. 700, 19 L. Ed. 227) under a law approved by a *de facto* governor (*The State of Wisconsin, ex rel., v. Williams,* 5 Wis. 308), before a jury drawn by a *de facto* jury commissioner (*State v. Lee,* 35 S. C. 192, 14 S. E. 395), in a court sitting in a *de facto* municipality (*Steelman v. Vickers,* 51 N. J. L. 180, 17 Atl. 153), and presided over by a *de facto* judge (*State v. Carroll,* 38 Conn. 449), upon an information filed by a *de facto* county attorney (*In re Gilson, Petitioner,* 34 Kan. 641, 9 Pac. 763), or an indictment presented by a *de facto* grand jury (*The State v. Marsh,* 13 id. 596).'" (p. 744.)

There can be no question but that the judge *pro tem.* in this case was a *de facto* judge regardless of the right to hold an election at the time it was held, and his acts as such judge *pro tem.* cannot now be attacked collaterally, and that this attack is collateral. Some of the quotations above were made more at length to cover the question of a collateral attack as well as that of a *de facto* judge, and it may safely be concluded that no one but a representative of the people generally, as the attorney-general or the county attorney or one who claims the right to the office himself, can attack the validity of the acts of a *de facto* officer or his right to hold the office.

The appellant further contends that the election of a judge *pro tem.* to hear the motion for a new trial and pronounce sentence after the qualification of the newly appointed judge, was wholly illegal and conferred no authority upon him to act as such *pro tem.* judge, and insists that the Golden-Mitchell decision, *supra,* is conclusive upon that point, but in that case the judge *pro tem.* was not reëlected after the appointment of the new judge; neither was there any showing in that case of a disqualification of the new judge to hear the motion for a new trial as there was in this case; besides, the bar was at that very time regularly proceeding to elect a judge

*pro tem.* because of the absence of the newly appointed judge, so that the former judge *pro tem.* who was assuming to act was no longer reputed and recognized by the bar and officers of the court to be a judge *pro tem.*, and consequently not a *de facto* judge. The same rule applies to this second point as to the former, with reference to its being a collateral attack, and cannot be maintained by the appellant.

There is no complaint or showing of any erroneous or prejudicial rulings during the trial except those with reference to the right of the *pro tem.* judge to act as judge, and we find no error in that regard.

The judgment is affirmed.