No. 43,271

STATE OF KANSAS, *Appellee*, v. VERNON KING, *Appellant*.

(378 P. 2d 147)

Opinion filed January 26, 1963.

*E. J. Schumacher*, of Topeka, argued the cause and was on the briefs for the appellant.

*Robert M. Brown*, County Attorney, argued the cause, and *William M. Ferguson*, Attorney General, and *Sherman A. Parks*, Assistant County Attorney, were with him on the briefs for the appellee.

The opinion of the court was delivered by

PARKER, C. J.: Vernon King and his father, Leonard King, were arrested and eventually charged jointly in an information, filed in the district court of Shawnee County, with commission of the crime of keeping a place, to-wit: A room to which persons were accustomed to resort, for the purpose of gambling, contrary to the provisions of G. S. 1949, 21-915. Thereafter the court ordered separate trials for each defendant. Vernon's trial by a jury resulted in his conviction for the crime charged and sentence for its commission in accord with the terms of the statute. For that reason we shall proceed to dispose of the instant appeal as if he were the only defendant and/or appellant involved in the court below.

The record presented in this case is such that all facts required to insure a proper understanding of the issues can be fully developed in disposing of claims of errors made by the appellant. Therefore we shall dispense with the usual factual statement.

For present purposes it may be stated that in his efforts to protect the rights of his client appellant's diligent counsel (1) presented numerous pretrial motions for the trial court's consideration and resisted motions of like nature made by the state; (2) made repeated objections to the propriety of evidence adduced by the state in support of its case; (3) requested instructions which were refused; (4) vigorously presented his views of the evidence in oral argument; and that, notwithstanding all this, the jury returned a verdict finding appellant guilty of the offense charged within thirty-five minutes after it had retired to the jury room. It should also be stated that, after the return of the verdict and within the time allowed by our code of criminal procedure, counsel filed a full and complete motion for a new trial wherein he directed the trial court's attention to all claims of error relied on by him as grounds for the granting of that relief. And added, that with equal diligence, counsel later perfected a proper appeal and thereafter filed an abstract containing adequate specifications of error, and a brief setting forth a statement of questions involved, which are sufficient in form and substance to entitle appellant to appellate review of the claims of error relied on as affording grounds for reversal of the trial court's judgment and sentence.

The questions involved, as stated in appellant's brief, are substantially the same as the errors charged in his specifications of error. Omitting repetitious statements the specifications charge that the trial court erred:

"(1) . . . in overruling Motion for New Trial.

"(2) . . . in overruling Motion to Quash and Plea in Abatement.

"(3) . . . in overruling Motion to Dismiss defendant from the bar.

"(4) . . . in admitting evidence secured by illegal search and seizure.

"(5) . . . in admitting evidence secured by entrapment.

"(6) . . . in overruling objection to evidence of gun.

"(7) . . . in overruling objection to the admission of evidence of dice, money in bag, pictures, and marked bills.

"(8) . . . in permitting the County Attorney to question defendant concerning his charges and offenses, including misdemeanors and court martial conviction.

"(9) . . . in overruling Motion for Continuance and Motion for Change of Venue.

"(10) . . . in permitting the State of Kansas to endorse additional witnesses on date of trial.

"(11) . . . in refusing to give instructions requested by the defendant."

Hereafter claims of error will be identified by number, as they appear in the quoted specifications of error, and questions raised with respect to each such claim will be disposed of accordingly.

1. In connection with the overruling of his motion for a new trial appellant suggests, although he does not strenuously argue the point, that the jury's verdict is not sustained by sufficient evidence. This requires a review of the record. Stated in summarized fashion the facts supported by the evidence presented may be stated thus:

In the early morning hours of August 31, 1961, a place, known as King's Place, located in the upstairs of a building on Kansas Avenue in the city of Topeka, was visited by two individuals who were agents for the Alcoholic Beverage Control Unit of the State, at which time they were admitted without any question. The place consisted of four rooms with open doors leading from room to room. The agents purchased drinks from the appellant, who was behind the bar and then went to the easternmost room of the place where they observed a pool table on which were stacks of silver dollars and other money on a metal plate directly in front of a man, one Holmes, who appeared to be running a dice game. The agents shot dice two or three times, betting a dollar each throw, and each time the money was either paid them or taken by Holmes, depending on the outcome of the roll of the dice.

The same agents returned to the establishment on the early morning of September 1, 1961. They were admitted without question and again purchased a drink from the appellant, who was again at the bar. Thereafter they walked back to the easternmost room of the establishment where, except for the fact the dice game was in progress, they observed a situation somewhat similar to the one existing at the time of their prior visit. One of the agents joined in the dice game. Holmes took ten percent of the amount on the table each time a bet was won or lost by the parties in the game. During the game the agent participating handed Holmes a ten-dollar bill, from which he had previously recorded the serial number. Holmes took the bill and went back to the second room, where appellant was tending the bar, to make change. While the dice game was in progress police and sheriff officers, who were raiding the premises for alcoholic liquor, armed with a search warrant, entered the establishment.

Appellant was apprehended behind the bar by one of the police officers. He was searched and a .38-caliber snub-nose revolver was

found in his hip pocket. He was then asked if he would open the cash register to check for a ten-dollar bill. He replied he had no objection and complied with the request. Thereupon the officer found a ten-dollar bill in the cash register bearing the same serial number as the one the agent had given to Holmes and that the latter had turned over to appellant. At that time the appellant informed the police officer he was running the place in partnership with his father, but that he, the appellant, did most of the work because of the father's age.

The officers took a pair of red dice, a pair of white dice, and a leather bag containing $14.40 from the dice table. They also took a photograph of the table. These items were a part of the evidence adduced at the trial.

The evidence further showed that for the months of August and September 1961, the appellant paid the rent to the landlord, Roy Jenkins, for the use of the upstairs premises, known as King's Place.

During the course of the trial appellant testified as a witness in his own behalf. He maintained he was operating a private club, at the location in question, but was unable to explain how the agents had entered without cards or identification. He admitted that he served liquor at the establishment without a license; admitted that he had been convicted of maintaining an open saloon on the same premises; admitted that he had been charged with gambling as a result of being in possession of a gambling stamp in 1954; and explained he was carrying the gun the officers had taken from him for the reason he needed it for protection because he handled quite a bit of money, making change.

In the face of the foregoing evidence appellant's contention the evidence was insufficient to sustain the verdict of the jury finding him guilty of committing the offense of keeping a house, room or place to which persons were accustomed to resort for the purpose of gambling, lacks merit and cannot be upheld.

In oral argument appellant's counsel, with commendable candor, conceded that one ground of the motion for a new trial, to the effect appellant had discovered new and material evidence, and another, charging that the jury and county attorney, as well as the witnesses for the state, were guilty of misconduct preventing appellant from having a fair trial, were abandoned. All other grounds relied on in the motion are involved in the questions to be presently disposed of and will not be specifically mentioned.

2. Appellant suggests the information failed to state a public offense because it did not charge him with all of the prohibited activities contained in 21-915, *supra.* In other words that the entire statute contains a single offense. This contention is completely answered, contrary to his position, in *The State v. Brown,* 118 Kan. 603, 236 Pac. 663, where it is said:

". . . The information then charges defendant with keeping a place where persons were permitted to congregate, or resort, for the purpose of gambling. This is a separate felony under the latter part of R. S. 21-915. . . ." (pp. 614, 615.)

In connection with the same point our attention is directed to the first of the separate offenses set forth in 21-915, *supra,* by an argument to the effect that it is an essential element of the offense of setting up or keeping a gaming device that the state not only allege in the information but establish by evidence there was a keeper of such device. The short and simple answer to all arguments advanced on this point is that appellant was charged with the last, not the first, of the separate offenses set forth in the statute. A further answer appears from our decisions holding that where— as here—an information charges an offense in the plain and simple language of a statute it is sufficient as against a motion to quash (see, *e. g., State v. Ashton,* 175 Kan. 164, 173, 262 P. 2d 123; *State v. McGaugh,* 180 Kan. 850, 853, 308 P. 2d 85; *Gray v. Hand,* 186 Kan. 668, 669, 352 P. 2d 3).

In passing, although it is argued in connection with the motion to quash, we note a contention the evidence failed to show there was a keeper of the device. There are two answers to this argument. In the first place no such evidence was required to establish the charge involved on appellate review. In the next the evidence is replete with evidence disclosing that Holmes, as appellant's employee, was the keeper of the dice table.

Resort to the plea in abatement makes it apparent the claim such plea should have been sustained is based primarily upon the premise the magistrate who held appellant's preliminary hearing was not qualified to act as an examining magistrate. The record presented does not present this question for review and it is not argued in the brief. Under such circumstances it is to be considered as abandoned (see *State v. Scott,* 156 Kan. 11, 131 P. 2d 664; *State v. Owen,* 161 Kan. 361, 362, 168 P. 2d 917). Even if such question were here it is interesting to note that, under our decisions, appellant is in no position to challenge the authority of the examining

magistrate through the medium of a plea in abatement (see, *e. g.*, *State v. Billings*, 120 Kan. 162, 242 Pac. 136; *State v. Robinson*, 124 Kan. 245, 259 Pac. 691; *State v. Roberts*, 130 Kan. 754, 288 Pac. 761; *Hancock v. Nye*, 118 Kan. 384, 385, 234 Pac. 945, and decisions there cited).

3. From the record presented it appears appellant's motion to "Dismiss defendant from the bar" was made just prior to his opening statement and based upon (1) insufficiency of the information to state a public offense and (2) appellant was jointly charged with another defendant (see *State v. Leonard King*, [No. 43,258, this day decided], 190 Kan. 822, 378 P. 2d 155) that he had never asked for a separate trial and that he should have been tried jointly with his codefendant. The first point has been previously determined and requires no further attention. As to the second we direct attention to the fact our statute G. S. 1949, 62-1429, and decisions construing its force and effect (see, *e. g., The State v. Roselli*, 109 Kan. 33, 41, 198 Pac. 195) give the trial court discretion over the subject involved and that its discretion in connection therewith will not be disturbed in the absence of an affirmative showing it has been abused. Appellant has failed to make any such showing.

4. Although the objection was not raised in the court below appellant now claims the trial court erred in admitting evidence secured by illegal search and seizure. The only case cited in support of this argument is the recent decision of the United States Supreme Court in *Mapp v. Ohio*, 367 U. S. 643, 6 L. Ed. 2d 1081, 81 S. Ct. 1684, and, without making any effort to identify the evidence complained of, the only contention advanced is that the *Mapp* case holds "that evidence obtained by an unconstitutional and unlawful search is inadmissible in a state prosecution because its use violated due process of law guarantees." We proceed on the assumption the evidence of which appellant complains consists of the gambling paraphernalia, heretofore described. This equipment, it is to be noted, was taken by the law enforcement officers from the appellant's dice table, when they observed the dice game in operation, at a time when they were in the appellant's establishment and legally on the premises, armed with a lawful search warrant for alcoholic liquor. Conceding, for present purposes, that the *Mapp* case holds that evidence obtained by an unconstitutional and unlawful search is inadmissible in a state prosecution because its use violates the constitutional guarantees of due process of law, does not mean that case is a precedent controlling disposition of the

case at bar. Indeed after careful consideration of what is there said and held we have concluded, that from the standpoint of facts and legal issues involved, the case is clearly distinguishable and is not to be construed as supporting appellant's position that, in the face of facts and circumstances such as have been heretofore outlined, the evidence in question was obtained by means of unconstitutional and unlawful search and seizure.

5. The only argument advanced in support of appellant's claim the court erred in admitting evidence secured by entrapment is based on the premise that under Kansas law evidence so secured is admissible only when there is probable cause. No decisions supporting this contention are cited. Under such circumstances we may well assume appellant was unable to find any. In any event, in the face of all the related facts and circumstances, it cannot be successfully argued that at the time the evidence in question was obtained there was no probable cause for believing the appellant was maintaining a place where persons were accustomed to resort for the purpose of gambling. Moreover, we refuse to hold that evidence obtained under the existing conditions was procured by entrapment.

6. The primary issue involved in this case is whether appellant was the proprietor of the establishment and responsible for the operation of a place where persons were accustomed to resort for the purpose of gambling. The gun, which is conceded to have been found on the person of the appellant, was offered in evidence as supporting that issue. The court admitted this evidence on that basis and, in doing so, orally instructed the jury to give such evidence no weight for any other purpose. In addition, at the close of the trial, the court instructed the jury to keep in mind that appellant was not charged with any offense involving the use of the gun. We believe the gun, when considered along with the other evidence, including the appellant's own admissions, constituted some evidence of appellant's status in the establishment and was properly received in evidence for the purpose specifically limited by the trial court in its instructions.

7. In view of what has been heretofore stated and held, and after reviewing all questions raised with respect thereto, we are convinced that other evidence of which appellant complains cannot be said to have been erroneously received. Assuming, without deciding, that any such evidence was improperly admitted, it was merely cumulative in nature and hence did not result in prejudice

to his substantial rights. Under these circumstances error, if any, in the admission of this evidence must, under our statute, G. S. 1949, 62-1718, be disregarded.

8. Appellant took the witness stand and testified as a witness in his own behalf. Under these circumstances his contentions to the effect the trial court erred in permitting the county attorney to question him concerning other offenses lacks merit and cannot be upheld. See *State v. Osborn*, 171 Kan. 330, 232 P. 2d 451, where it is said and held:

"In this jurisdiction there can be no question about the status and rights of a defendant in a criminal action where he elects to take the stand as a witness in his own defense. When he does so he places his character and credibility in issue and, when questioned in good faith, he may be cross-examined with the view of impairing his credibility concerning previous offenses and subjects involving him in degradation and disgrace although they do not pertain to the charge for which he is then on trial. More than that the extent of the cross-examination touching his credibility is a matter which rests in the sound discretion of the trial court and rulings with respect thereto will not be disturbed in the absence of a clear showing that discretion has been abused. Our early decisions establish the foregoing principles beyond all peradventure of doubt but we need not burden this opinion by their citation. They are referred to and relied on in our more recent decisions of *State v. Pfeifer*, 143 Kan. 536, 56 P. 2d 442 and *City of Wichita v. Hibbs*, 158 Kan. 185, 146 P. 2d 397, which reiterate and adhere to such prinpicles as there and here announced.

"Appellant does not seem to question the principles of law heretofore announced so much as he does their application. In an attempt to avoid their force and effect he relies on three propositions. First he contends that for purposes of testing his credibility a defendant cannot be interrogated on cross-examination respecting prior arrests. Our decisions are to the contrary. See *State v. Bigler*, 138 Kan. 13, 23 P. 2d 598; *State v. Nossaman*, 120 Kan. 177, 243 Pac. 326; *The State v. Rhoades*, 113 Kan. 455, 215 Pac. 291; *State v. Story*, 144 Kan. 262, 58 P. 2d 1090. All of such decisions contain statements, in one form or another, to the effect that on cross-examination a defendant may be questioned regarding prior arrests and that his answers with respect thereto are admissible in evidence for what they may be worth in determining his character and credibility." (pp. 333, 334.)

See, also, *The State v. Roselli*, 109 Kan. 33, 198 Pac. 195.

9. It is urged the court erred in overruling appellant's motion for continuance and his motion for change of venue. The well-established rule of this jurisdiction is that the matter of a continuance in a criminal prosecution is largely within the discretion of the trial court and that its rulings with respect thereto will not be disturbed unless it has been made to appear that discretion has been abused to the prejudice of substantial rights of the defendant. (*State v. Hickok & Smith*, 188 Kan. 473, 482, 363 P. 2d 541.) We

find nothing in this record which makes it appear, affirmatively or otherwise, that appellant's substantial rights were prejudiced by the trial court's denial of his motion for a continuance.

We were told in oral argument the motion for change of venue was based on extensive newspaper publicity. However, the record fails to include the motion and makes no attempt to show the nature of the publicity or establish that it resulted in depriving appellant of a fair and impartial trial. Under these circumstances it is asking too much of this court to hold that the trial court erred in overruling such motion. See *In re Hedrick Appeals*, 155 Kan. 165, 123 P. 2d 806, which holds:

"The facts that the arrest of one charged with crime and the offense of which he is charged have received an extensive amount of publicity in many newspapers, local and metropolitan, which are distributed and read throughout the county or judicial district, and the matters generally discussed by the inhabitants and opinions freely expressed concerning the same, without more, are insufficient as a matter of law to sustain an order for the change of venue." (Syl. ¶ 7.)

10. Appellant makes no showing, in fact he fails to claim, he was prejudiced by the trial court's action in permitting the state to introduce the names of additional witnesses on the information prior to and on the date of the trial. The rule is well-settled that in a criminal action the endorsement of additional names on an information prior to or at the beginning of a trial is a matter that rests largely within the discretion of the trial court: (See *State v. Thomas*, 173 Kan. 460, 249 P. 2d 645, and the numerous cases cited in Hatcher's Digest [Rev. Ed.], Criminal Law, § 77.) After careful examination of the record presented in this case we cannot say that tribunal abused its discretion in permitting the state to introduce the names of additional witnesses on the information.

11. We are not disposed to labor contentions advanced regarding instructions requested by appellant. It suffices to say they were all based upon his erroneous concept he was being prosecuted under sections of the statute other than the one with which he was charged, *i. e.*, keeping a room or place to which persons were accustomed to resort for the purpose of gambling, as prohibited by G. S. 1949, 21-915.

After a detailed and somewhat tedious review of the record we have been unable to find any reversible error in this case. Therefore the trial court's judgment is affirmed.