317 So.2d 709 (1975)
Baynard RAPER
v.
STATE of Mississippi.
No. 48639.
Supreme Court of Mississippi.
August 25, 1975.
*710 Harry L. Kelley, Jackson, for appellant.
A.F. Summer, Atty. Gen. by Ben H. Walley, Asst. Atty. Gen., Jackson, for appellee.
Before RODGERS, P.J., and SMITH and WALKER, JJ.
RODGERS, Presiding Justice, for the Court:
The appellant Baynard Raper was indicted, tried and convicted in the Circuit Court of the First Judicial District of Hinds County, Mississippi, on a charge of the possession of more than one (1) ounce of a controlled substance, namely marijuana.
Upon the return of the indictment, the defendant filed a motion requesting the court to suppress the evidence of the discovery of marijuana in his home upon the grounds that (1) the affidavit to secure a search warrant of his home was made before one who was not authorized to issue search warrants, and (2) the alleged police justice pro tem acted at a time when the police justice was present, able and willing to exercise the duties of the office of police justice of the City of Jackson, Mississippi.
The defendant also filed a motion requesting the trial court to require the State of Mississippi to reveal the name of the person who informed them that there was marijuana in the defendant's home.
The movant offered a certificate from the city clerk stating that she did not find any record of the appointment of John H. Downey as police justice pro tem in the records of the Commission. The officer who obtained the search warrant testified that he appeared before John H. Downey at his home between 8:00 and 8:30 on the night of November 6, 1972, and obtained the search warrant. It was stipulated that the duly-appointed police justice of the City of Jackson was at his home in Jackson at this time. After adjournment without a decision, the State requested a reopening of the hearing upon the ground that the State had discovered an order entered January 9, 1973 [after the search warrant on November 6, 1972] as a nunc pro tunc order, appointing John H. Downey Police Justice Pro-Tempore from and after March 31, 1971. This order states that "[o]n the 6th day of April, 1971 the Mayor of the City of Jackson, at 12:00 noon, administered the oath of office to John H. Downey, Police Justice Pro Tem for the City of Jackson, ..." The Mayor testified that he swore in Zeke Downey at noon on the 6th day of April, and that he recorded it on an appointment book. The record in the police department was introduced showing that Mr. Downey's fingerprints and personnel record were filed with the department on April 6, 1971, as being an employee of the City as Police Justice Pro Tem. He resigned November 7, 1972. The record showed that he was paid a salary until his resignation. The circuit judge overruled the motion to suppress the evidence obtained by the search warrant. No evidence was offered on the motion to require the state to divulge the name of the officer's informant, and the petition was denied.
The trial was held. Evidence was offered showing that the search warrant was obtained and a large amount of marijuana was found on a bed in the home of defendant Baynard Raper. The jury returned a verdict of guilty, and the trial judge sentenced the defendant to serve a term of three (3) years in the state penitentiary.
The defendant has appealed to this Court and now contends here that the trial court should have sustained his motion to suppress the evidence obtained by the search warrant because (1) the person issuing the warrant was neither an officer de jure nor an officer de facto; and (2) moreover, he had no standing to determine probable cause to issue a search warrant since the regularly appointed acting and qualified *711 police justice was within the city limits of Jackson, Mississippi, and no effort was made to locate the police justice to obtain a warrant from him.
We do not think it necessary to comment on the fine argument in the briefs on the proposition that the Mayor and Board of Aldermen or Commission can only act through their minutes. Neither do we think it necessary to comment on the authority of the Mayor and Commission to enter an order nunc pro tunc to correct their minutes at a later date, without some evidence of record on which to base their order. There is a great deal of authority on both postulates.
The real issue in the first instance is whether or not the acts of the person who issued the writ were valid.
The Mayor and Commissioners had the authority to appoint a police justice pro tempore.[1]
Although it is true that oral testimony may not be given in an effort to create rather than correct records of municipal corporations, nevertheless, evidence may be offered to show whether or not a person assumed to act as an officer under color of title. See the record of testimony introduced in Upchurch v. City of Oxford, 196 Miss. 339, 17 So.2d 204 (1944). There is at least one case where we have permitted evidence to contradict the minutes of the mayor and board of aldermen. See Stephens v. Mayor and Board of Aldermen of City of Natchez, 261 So.2d 486 (Miss. 1972).
The testimony in this case shows that John H. Downey was sworn in as a police justice pro tem, that he went through the regular procedure of making out his personnel file and that he was regularly paid a salary and acted in the capacity of a police justice.
In Upchurch v. City of Oxford, supra, in an effort to determine the status of one C.E. Harrison who was acting as Mayor of Oxford, the Court had this to say:
"Was Harrison a de facto officer? This Court, in Adams v. Mississippi State Bank, 75 Miss. 701, 725, 23 So. 395, 398, adopted this definition of a de facto officer: `An officer de facto is one who exercises the powers and discharges the functions of an office, being then in possession of the same under color of authority, but without actual right thereto.' The Court then added, `Many authorities of great value maintain that there must be color of title as well as color of authority, and this we strongly incline to think is the sound view.' The admitted facts in this case bring Harrison within that definition. His appointment by the Governor was certainly color of title and of authority. It is not necessary for us to, and we do not, decide whether he was a de jure officer under such appointment. See Chap. 187, Laws of 1942, and Section 3765, vol. 3, Mississippi Code of 1942.
Being at least a de facto officer, were the acts of Mr. Harrison void? The opinion in the Adams case answers that, "There can be but one answer to the question, and that is, the judgment was not void. In all the adjudications we have been able to find, there is not a disssenting voice as to the absolute correctness of this answer. As to the public generally, and as to third persons, the judgment of a special de facto judge stands exactly in the attitude of a judgment rendered by a judge de jure, and this proposition rests upon considerations affecting the orderly administration of justice, and the welfare of society at large." 196 Miss. at 343-44, 17 So.2d at 204-05.
The foregoing rule seems to be universally accepted. See 43 Am.Jur. Public Officers *712 § 495, at 242 (1942). The author there says: "The principle is placed on the high ground of public policy, and for the protection of those having official business to transact, and to prevent a failure of public justice."
The Legislature of Mississippi has adopted this rule by legislative enactment: Mississippi Code Annotated Section 25-1-37 (1972).[2]
We must conclude, therefore, from the evidence here presented that John H. Downey was at least a de facto police justice, if not in fact actually a de jure officer, and that his acts as a de facto officer were not void.[3]
We will now deal with the issue raised by the appellant wherein he contends that even if we conclude that the officer was a police justice pro tem, he had no authority to act because the regularly-appointed police justice was within the city limits.
Mississippi Code Annotated Section 21-23-9 (1972) is in the following language:
"In any municipality wherein a police justice is appointed, the governing authorities shall have the power and authority to elect a police justice pro tempore, who shall have the same powers and shall perform all duties of the police justice in the absence of such police justice."
It is the contention of the appellant that the last phrase "in the absence of the police justice" means that the police justice pro tem cannot act unless the regular police justice is out of the city limits. Appellant cites several cases wherein it is said: "[w]here duly elected police justice was present and able to act, acting police justice had no jurisdiction... ."
Appellant cited as authority for his contention the case of City of Pascagoula v. Sharp, 136 Miss. 756, 101 So. 683 (1924), but we note that in that case this Court said: "The record before us is silent as to whether the mayor was absent, or incapacitated or disqualified to act, and the presumption that such was the case must prevail." 136 Miss. at 760, 101 So. at 684.
There is a strong presumption that the official acts of officers are valid. The text writer in 20 Am.Jur. Evidence § 170, at 174-75 (1939), has this to say on this subject:
"In the absence of any proof to the contrary, there is a very strong presumption embodied in the maxim, `omnia prae sumuntur rite esse acta,' that public officers have properly discharged the duties of their office and performed faithfully those matters with which they are charged. Stated in another way, the courts will presume, in the absence of evidence to the contrary, that public officers have not culpably neglected or violated their official duties and have not acted illegally in the doing of any official act."
The author goes on to say:
"The presumptions that public officers discharge the duties of the office and that in the discharge of such duties observe all the necessary and proper formalities imposed by law are applicable to all Federal, state, county and municipal officers of high or low rank and to the official duties and acts of public *713 boards and commissions. Similarly, the presumption exists that each department of the government has performed its official duties as prescribed by law. It is the settled and well-intrenched policy of the law to indulge in every reasonable presumption in favor of sustaining the ministerial acts of officers." 20 Am.Jur. Evidence § 171, at 177-78 (1939).
This rule is firmly fixed as a part of our case history. See the many cases collected by the West Publishing Company under Evidence, 65, 82, 86.
There are many reasons why a police justice, or a judge cannot act in a given case. Absence from his usual place of business is only one of the reasons why a judge is unable to serve. He may be ill, related to the parties, pecuniarily interested in the case, or he may be a witness. These are among many other reasons why a judge would have to absent himself from acting in a particular case. Moreover, a justice of the peace as a judge would not be required to go out of the city or to a hospital in order to recuse himself to be "absent" within the meaning of the statute. Miss. Code Ann. § 21-23-9 (1972).
The duly-appointed police justice did not testify. In this case we have only a stipulation in evidence that he was in the city at the time the police justice pro tempore acted to issue the search warrant. The mere fact that the regular police justice was in the city at the time is not sufficient to overcome the strong presumption that the official act of the police justice pro tempore was valid. We hold, therefore, that the argument that the acts of the police justice pro tempore were void is not well taken.
On the other hand, the motion filed by the defendant requesting the court to require the state to divulge the name and address of the person who informed the officers of the violation of the controlled substance law should have been sustained by the trial court. The name of the informant in this case was essential to a fair trial for the following reasons.
The affidavit filed by the officer with the police justice pro tem stated, among other things:
"The information now furnished me by this Confidential Source is that a white male named Wayne Barrett who lives at 104 Stillwood has in his possession at this time a large quantity of marijuana and other dangerous drugs for the purpose of sale. This Confidential Source knows this information to be true and correct because he has seen this Marijuana in this Barretts [sic] possession at his address within the past twenty-four hours."
The testimony here shows that the defendant Baynard Raper was arrested and indicted because the contraband was discovered in his home, and he is held because of his alleged constructive possession of contraband. The record shows that the defendant left home at 2:30 A.M. on the date of his arrest and was erecting steel at the Mississippi Junior College in Moorhead, Mississippi, until 3:30 P.M. He returned home around 9:00 P.M. He had just gone into the kitchen to eat when the officers pushed the door open and injured his face. He testified that he had not been in the bedroom where the officers found marijuana on the bed and did not know it was there. He testified that he had never been arrested for anything.
The defendant also testified that he had heard of Wayne Barrett but that he had never seen him. He said, however, on Sunday he went fishing with a man by the name of Wayne Bartlett and a girl named Peggy Brown. He testified that a man by the name of John LeMay  his friend, who had finished school at El Paso, Texas, and who was on his way home to Huntsville, Alabama  was at his house when he returned from work.
*714 The affidavit of the officer to obtain a search warrant makes it abundantly clear that the informer knew who had possession of the marijuana within the past twenty-four hours and knew that man was not the defendant on trial. He was, therefore, a very material witness for the defendant.
Ordinarily, this Court is reluctant to require the State to divulge the name of informants because once their identity is known, they lose their ability to detect criminal activity. However, when it appears that the informer is a participant or is a material witness essential to the defense of the accused, this Court will not hesitate to require the state to divulge his identity.
Our own constitution [Miss.Const. § 26][4] as well as the federal constitution [U.S.Const. amend. VI][5] requires that the defendant be confronted by witnesses against him, and that he have compulsory process to bring into court witnesses in his favor.
In the case of Roviaro v. United States, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957), the Supreme Court in speaking of the privilege of the government to withhold the identity of an informer had the following to say on the subject:
"Where the disclosure of an informer's identity, or of the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way. In these situations the trial court may require disclosure and, if the Government withholds the information, dismiss the action." 353 U.S. at 60-61, 77 S.Ct. at 628, 1 L.Ed.2d at 645.
The Court cited the following cases as a precedent: United States v. Coplon, 185 F.2d 629, 28 A.L.R.2d 1041 (CA 2d N.Y. 1950); United States v. Andolscheck, 142 F.2d 503 (CA 2d N.Y. 1944).
It is obviously unfair for the State of Mississippi to have a witness who knows that some other person had the marijuana in his possession, and at the same time, prosecute the defendant on the theory of constructive possession because the contraband was found in his home.
The judgment and conviction of the appellant is reversed. The motion of the defendant to require the State of Mississippi to divulge the identity of the informant is sustained, and the case is remanded to the trial court for a new trial consistent with the foregoing opinion.
Reversed and remanded.
GILLESPIE, C.J., and PATTERSON, INZER, ROBERTSON, SUGG and BROOM, JJ., concur.
NOTES
[1] Mississippi Code Annotated Section 21-23-9 (1972).
[2] "The official acts of any person in possession of a public office and exercising the functions thereof shall be valid and binding as official acts in regard to all persons interested or affected thereby, whether such person be lawfully entitled to hold the office or not and whether such person be lawfully qualified or not; but such person shall be liable to all the penalties imposed by law for usurping or unlawfully holding office, or for exercising the functions thereof without lawful right or without being qualified according to law." Miss. Code Ann. § 25-1-37 (1972).
[3] State v. Roberts, 130 Kan. 754, 288 P. 761 (1930); 666 West End Ave. Corporation v. Deutsch, 135 Misc. 707, 238 N.Y.S. 256 (1929); Boggs v. State, 56 Okl.Cr. 119, 34 P.2d 1078 (1934).
[4] "In all criminal prosecutions the accused shall have a right to be heard by himself or counsel, or both, to demand the nature and cause of the accusation, to be confronted by the witnesses against him, to have compulsory process for obtaining witnesses in his favor, and, in all prosecutions by indictment or information, a speedy and public trial by an impartial jury of the county where the offense was committed; and he shall not be compelled to give evidence against himself; but in prosecutions for rape, adultery, fornication, sodomy or crime against nature the court may, in its discretion, exclude from the courtroom all persons except such as are necessary in the conduct of the trial." Miss.Const. § 26.
[5] "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defence." U.S.Const. amend. VI.